WRIGHT BROTHERS BUILDERS, INC. *v.* JOSEPH A. DOWLING ET AL.
(SC 15741)

Borden, Berdon, Katz, Palmer and McDonald, Js.

Argued January 15—officially released November 3, 1998

*Alan R. Spirer*, for the appellant (plaintiff).

*Frank W. Murphy*, with whom were *Christopher C. Vaugh* and, on the brief, *Barbara L. Coughlan*, for the appellees (defendants).

*William H. Ethier* filed a brief for the Home Builders Association of Connecticut, Inc., as amicus curiae.

*Opinion*

BERDON, J. The dispositive issue in this certified appeal is whether a home improvement contract entered into by the plaintiff, Wright Brothers Builders, Inc., and the defendants, Sandra O. Dowling and her husband, Joseph A. Dowling, complied with the Home Improvement Act (HIA), General Statutes § 20-418 et seq.

The plaintiff, a licensed home improvement contractor, instituted this action to foreclose a mechanic's lien on property owned by Sandra Dowling.[1] The plaintiff had filed the lien to secure payment for work that it performed on the residence of Sandra Dowling in accordance with a written home improvement contract (contract). In defending against foreclosure of the lien, the defendants claimed that the contract did not comply with the statutory requirements of General Statutes § 20-429 (a)[2] of the HIA and, therefore, could not be enforced by an action for foreclosure of the lien or by any other means.

The attorney trial referee to whom the matter was initially referred in accordance with General Statutes § 52-434 (a) (4) and Practice Book § 19-1 et seq., formerly § 428 et seq., concluded (1) that the contract complied with the HIA and (2) that even if the contract failed to comply with the HIA, the defendants were precluded by their own bad faith from invoking the HIA as a defense to the contract. In accordance with his

---

[1] The plaintiff also sought damages for breach of contract, unjust enrichment, interference with financial expectancies, and false representation.

[2] General Statutes § 20-429 (a) provides: "No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740 [Home Solicitation Sales Act], (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. Each change in the terms and conditions of a contract shall be in writing and shall be signed by the owner and contractor, except that the commissioner may, by regulation, dispense with the necessity for complying with the requirement that each change in a home improvement contract shall be in writing and signed by the owner and contractor."

Subsequent to the execution of the original contract in this case, but prior to the filing of the plaintiff's complaint, § 20-429 was amended by the addition of subsection (f). See footnote 10 of this opinion. Because that amendment is not involved in this case, references herein to § 20-429 are to the current revision.

findings, the attorney trial referee recommended judgment for the plaintiff in the amount of $101,275. The trial court rejected the attorney trial referee's recommendations, finding that (1) the contract violated § 20-429 (a), and (2) there was insufficient evidence of bad faith to preclude the defendants from invoking the HIA as a defense to the contract. Consequently, the trial court rendered judgment in favor of the defendants.

On appeal to the Appellate Court, the judgment was affirmed in a per curiam decision. *Wright Bros. Builders, Inc.* v. *Dowling*, 45 Conn. App. 918, 694 A.2d 46 (1997). We granted the plaintiff's petition for certification limited to the following two issues: (1) "Did the Appellate Court properly affirm the trial court's decision overruling the attorney trial referee's conclusion that the agreement between the plaintiff and the defendants complied with [the HIA], General Statutes (Rev. to 1993) § 20-429 (a) (6);[3] if so, did the Appellate Court also properly affirm the trial court's conclusion that the plaintiff is not entitled to recover under its claim of unjust enrichment?"; and (2) "Did the Appellate Court properly affirm the trial court's decision overruling the attorney trial referee's conclusion that the defendants' bad faith precluded their invocation of [the HIA] as a basis for repudiating the contract?" *Wright Bros. Builders, Inc.* v. *Dowling*, 242 Conn. 914, 914–15, 697 A.2d

---

[3] In this court, the defendants also argue that the contract violated § 20-429 (a) (7) because it did not include commencement and completion dates. The attorney trial referee found that this claim had no merit because § 14.1 of the contract provided: "The Basic Services to be performed shall be commenced in 5 days and, subject to authorized adjustments and to delays not caused by the Design/Builder, Substantial Completion shall be achieved in two hundred (200) calendar days."

We do not reach this claim because the defendants did not raise this ground for affirming the trial court's ruling in the Appellate Court. Practice Book § 84-11 (a), formerly § 4140 (a) ("[u]pon the granting of certification, the appellee may present for review alternative grounds upon which the judgment may be affirmed provided those grounds were raised and briefed in the appellate court").

369 (1997). We conclude that the contract complied
with § 20-429 (a) (6) and, therefore, we do not address
either the second part of the first certified question or
the second certified question.

The attorney trial referee found the following facts,
which are not in dispute. "The plaintiff is a licensed
home improvement contractor engaged in the business
of constructing residential and commercial structures.
. . . Sandra Dowling is the record owner of the prem-
ises located at 13 Hitchcock Road, Westport, Connecti-
cut, where she resides with her husband . . . Joseph
Dowling.

"After several months of preliminary design and esti-
mating work, the parties entered into the agreement
dated January 11, 1993. The agreement provided that
[the] plaintiff would renovate approximately 2817
square feet of the defendants' house and construct an
addition of approximately 3500 square feet. The plaintiff
was to be paid on a cost plus basis (10 percent for
overhead and 7 percent for profit), and the preliminary
budget was set at $528,360. Although [Sandra] Dowling
was the record owner, [Joseph] Dowling represented
the two in all substantive dealings with [the] plaintiff.

"Work began on the project in February, 1993. There-
after, the defendants initiated a number of changes and
upgrades, which raised the total contract budget to
$875,579 as of August 30, 1993. Leading up to that point
there had been a great deal of communication between
the parties, and [the] plaintiff regularly updated [the]
defendants regarding the cost and progress of the work.
This information was conveyed orally, in correspon-
dence and in periodic billings.

"Problems commenced when the work was nearing
completion. After receiving billing no. 7, dated August
30, 1993, which showed the revised budget of $875,579,
[Joseph] Dowling expressed concerns about the cost of

the job. Whereas before [the] defendants had promptly paid [the] plaintiff's billings, they failed to pay billing no. 7 in a timely fashion. On September 20, 1993, [Joseph] Dowling and Kelly M. Wright, [the] plaintiff's president, signed a one page document entitled 'Amendment to Contract dated 11 January, 1993 . . . .' Among other things, [the amendment] provided that:

" '1. Contractor agrees to finish Project at 13 Hitchcock Road, Westport, CT for a final guaranteed price of $835,579. . . .

" '7. There will be no change in the plans for construction and no alteration of material. The house will be delivered to Owner in "Turnkey" condition. . . .

" '9. The final payment ($67,474) shall be due sixty days after the issuance of Certificate of Occupancy and the approval of said work by the architect whose approval will not be unreasonably withheld. Builder agrees to assist Owner in preparing documents necessary for financing. . . .

" '11. Owner will pay $75,000 towards Contract upon signing of this Agreement. . . .'

"Pursuant to this amendment, the [defendants] paid $75,000 to [the] plaintiff. Thereafter, the project was completed. [The] [p]laintiff claims that $141,275 is due, whereas [the] defendants claim only $67,474 is [owing]. [The] [p]laintiff seeks the larger amount because it claims the scope of work was enlarged by the owner after the signing of the amendment. As a result, when [the] defendants tendered $67,474 in full and final settlement, [the] plaintiff refused the tender."

In January, 1994, the plaintiff filed a multicount complaint[4] against the defendants seeking, in part, to foreclose on the mechanic's lien it had filed on Sandra

---

[4] See footnote 1 of this opinion.

Dowling's property. In the defendants' answer, they interposed a special defense[5] claiming that the contract failed to comply with General Statutes § 42-135a (2) and (3) of the Home Solicitation Sales Act (HSSA),[6] the requirements of which are incorporated into § 20-429 (a) (6) of the HIA.

[5] The defendants also asserted a counterclaim alleging breach of contract, slander, intentional infliction of emotional distress, and a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.

[6] General Statutes § 42-135a provides in relevant part: "No agreement of the buyer in a home solicitation sale shall be effective if it is not signed and dated by the buyer or if the seller shall . . . (2) Fail to furnish each buyer, at the time he signs the home solicitation sales contract or otherwise agrees to buy consumer goods or services from the seller, *a completed form in duplicate*, captioned 'NOTICE OF CANCELLATION,' which shall be attached to the contract or receipt and easily detachable, and which shall contain in ten-point boldface type the following information and statements in the same language as that used in the contract:

'NOTICE OF CANCELLATION

. . . . *(Date of Transaction)*

YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE ABOVE DATE.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN TEN BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE SELLER AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY, IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE SELLER REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE SELLER'S EXPENSE AND RISK.

IF YOU DO MAKE THE GOODS AVAILABLE TO THE SELLER AND THE SELLER DOES NOT PICK THEM UP WITHIN TWENTY DAYS OF THE DATE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO THE SELLER, OR IF YOU AGREE TO RETURN THE GOODS TO THE SELLER AND FAIL TO DO SO, THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRIT-

The attorney trial referee, having found that the contract complied with the HIA, recommended judgment in the amount of $101,275 on the plaintiff's breach of contract claim, together with a dismissal of the defendants' counterclaim.[7] The plaintiff moved that the trial court accept the attorney trial referee's recommended ruling with respect to the award of monetary damages, but at the same time filed certain exceptions to the ruling. The trial court, rejecting the attorney trial referee's recommendations, concluded that (1) the contract violated the HIA and (2) the factual findings of the attorney trial referee were insufficient to allow the plaintiff to invoke the bad faith exception to the HIA.[8] Accordingly, the trial court rendered judgment in favor of the defendants on the complaint and on the Connecticut Unfair Trade Practices Act (CUTPA) count of their counterclaim, but awarded no damages to the defendants, reasoning that, although the plaintiff technically had violated the HIA, the defendants were not entitled to even nominal damages pursuant to CUTPA because they "not only did not suffer any loss, they actually received a windfall as the [attorney trial] referee found

TEN NOTICE, OR SEND A TELEGRAM TO . . . . (Name of Seller) AT . . . . (Address of Seller's Place of Business) NOT LATER THAN MIDNIGHT OF . . . . *(Date)*
    I HEREBY CANCEL THIS TRANSACTION.
    . . . . (Date)
                                    . . . . (Buyer's Signature)'

"(3) Fail, before furnishing copies of the 'Notice of Cancellation' to the buyer, to complete both copies by entering the name of the seller, the address of the seller's place of business, *the date of the transaction, and the date, not earlier than the third business day following the date of the transaction, by which the buyer may give notice of cancellation. . . .*" (Emphasis added.)

[7] The attorney trial referee determined that, pursuant to the September 20, 1993 amendment, the defendants were liable for $67,474, and that they were liable for an additional sum of $33,801 for expanding the scope of the project after the date of the amendment.

[8] The trial court did not, therefore, address all of the issues raised by the parties in response to the attorney trial referee's report.

that they had received approximately $100,000 of construction, for which the defendants are absolved from paying because of the violation of the HIA." That determination is not before us on this appeal.

The plaintiff appealed from the judgment of the trial court to the Appellate Court and that court affirmed the judgment. *Wright Bros. Builders, Inc.* v. *Dowling,* supra, 45 Conn. App. 918. This certified appeal followed. On this appeal, the plaintiff claims that the contract complies with the provisions of the HIA. The defendants dispute this contention, arguing that the contract failed to satisfy two requirements of the HSSA that are incorporated by reference into the HIA. Specifically, the defendants argue that the plaintiff did not attach two copies of the notice of cancellation to the copy of the contract that it provided to Sandra Dowling, as required by § 42-135a (2), and did not enter the date of the transaction or the date by which the transaction could be canceled on the notice of cancellation, as required by § 42-135a (3). The defendants claim that these defects in compliance preclude the plaintiff from enforcing the contract. The plaintiff responds that strict compliance with those sections is not required and that, despite the discrepancies, the contract complies with the HIA. We agree with the plaintiff.

The determination of the requirements of the HIA is a matter of statutory construction and, therefore, a matter of law over which this court's review is plenary. *Crandall* v. *Gould,* 244 Conn. 583, 590, 711 A.2d 682 (1998). "[T]he process of statutory interpretation involves a reasoned search for the intention of the legislature." (Internal quotation marks omitted.) *State* v. *Ledbetter,* 240 Conn. 317, 327, 92 A.2d 713 (1997). "In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative

policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Conway* v. *Wilton*, 238 Conn. 653, 663, 680 A.2d 242 (1996).

We begin with § 20-429 (a), a provision that has been the subject of several previous appeals before this court. Section 20-429 (a) provides in relevant part that "[n]o home improvement contract shall be valid or enforceable against [a homeowner] unless it: (1) [i]s in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of [the HSSA], (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. . . ." Because § 20-429 (a) (6) incorporates the provisions of the HSSA by reference, it is also necessary to consider those provisions. The section of the HSSA that pertains to notice of cancellation is § 42-135a.[9] That section provides in relevant part that it is the duty of the seller of the services to "furnish [to] each buyer . . . a completed form in duplicate, captioned 'NOTICE OF CANCELLATION,' which shall be attached to the contract"; General Statutes § 42-135a (2); and to complete both copies of the latter form, before furnishing them to the buyer, "by entering [onto the forms] the name of the seller, the address of the seller's place of business, the date of the transaction, and the date, not earlier than the third business day following the date of the transaction, by which the buyer may give notice of cancellation." General Statutes § 42-135a (3). Thus, the plain language of these sections requires home improvement contractors to furnish two copies

---

[9] See footnote 6 of this opinion.

of the notice of cancellation to the homeowners with whom they contract to undertake home improvement services by attaching two copies of the notice to the back of the homeowner's copy of the contract and that each of the copies specifies the date of the transaction and the date by which the contract may be canceled.

In construing § 20-429 (a), this court consistently has held that the requirements of that section are mandatory and that a contractor is precluded from enforcing a home improvement contract that does not satisfy its requirements.[10] See *Rizzo Pool Co.* v. *Del Grosso*, 232 Conn. 666, 680, 657 A.2d 1087 (1995) (enforcement precluded because contract did not provide commencement and completion dates); *Wadia Enterprises, Inc.* v. *Hirschfeld*, 224 Conn. 240, 247–48, 618 A.2d 506 (1992) (enforcement precluded because contract did not provide notice of homeowners' cancellation rights); *Habetz* v. *Condon*, 224 Conn. 231, 235–36, 618 A.2d 501 (1992) (same); *Sidney* v. *DeVries*, 215 Conn. 350, 354, 575 A.2d 228 (1990) (enforcement precluded because no complete written agreement existed); *Liljedahl Bros., Inc.* v. *Grigsby*, 215 Conn. 345, 349–50, 576 A.2d 149 (1990) (same); *A. Secondino & Son, Inc.* v. *LoRicco*, 215 Conn. 336, 340, 576 A.2d 464 (1990) (same); *Barrett Builders* v. *Miller*, 215 Conn. 316, 328, 576 A.2d 455 (1990) (enforcement precluded because contract did not contain entire agreement); *Caulkins* v. *Petrillo*, 200 Conn. 713, 717, 513 A.2d 43 (1986) (enforcement precluded because no written agreement existed). The mandatory

---

[10] Subsequent to the effective date of the original contract in this case, the legislature, by enacting No. 93-215, § 1, of the 1993 Public Acts, amended § 20-429 by adding subsection (f), which provides: "Nothing in this section shall preclude a contractor who has complied with subdivisions (1), (2), (6), (7) and (8) of subsection (a) of this section from the recovery of payment for work performed based on the reasonable value of services which were requested by the owner, provided the court determines that it would be inequitable to deny such recovery." That amendment, however, does not apply to this contract, which predated it.

nature of the requirements serves to advance the primary purpose of the statute, which is to protect consumers from unscrupulous contractors. In those cases where we have found a violation of the HIA, we also have found material noncompliance with the act's requirements. *Habetz* v. *Condon*, supra, 239.

Significantly, in concluding that the requirements of § 20-429 (a) are mandatory, we have twice used "strict compliance" language; see *Rizzo Pool Co.* v. *Del Grosso*, supra, 232 Conn. 680; *Barrett Builders* v. *Miller*, supra, 215 Conn. 326. We, however, have never applied that section so as to require perfect, ritualistic compliance as a condition precedent to recovery by a contractor.

In *Caulkins* v. *Petrillo*, supra, 200 Conn. 718–19, we declined to find an exception to the requirement of § 20-429 (a) in effect at the time that home improvement contracts be in writing where an oral contract had been fully performed by the contractor. In refusing to recognize an implied exception, we observed that the remedial purposes of the legislation would be significantly undermined if oral contracts could be enforced. Id., 720. In *Barrett Builders* v. *Miller*, supra, 215 Conn. 320–22, we declined to allow quasi-contractual recovery with respect to work performed under a home improvement contract that did not comply with several of the requirements of § 20-429 in effect at that time, and which the contractor admitted was unenforceable under the statute. The contract did not contain the entire agreement between the contractor and the homeowner, did not contain a starting date or a date of completion, and did not contain any notice of the homeowner's cancellation rights. Because the contractor admitted that the contract did not comply with § 20-429, we did not even consider the issue of compliance. Id., 327 n.6.

Similarly, in three other cases decided the same day as *Barrett Builders*, the facts were such as to leave no

doubt that the contracts did not satisfy the purposes of, or comply with, in even a loose sense, the requirements of the same revision of § 20-429. In *Sidney* v. *DeVries*, supra, 215 Conn. 353, we denied the contractor recovery because: (1) although certain documents were exchanged between the parties, it was impossible to harmonize them as they were "full of contradictory terms" and did not set out the scope of the work to be performed or other details necessary to a complete written agreement as required by § 20-429 (a); and (2) in light of the requirement of § 20-429 (a) that the home improvement contract be in writing, the defendant could not prevail on his oral contract claim. In *Liljedahl Bros., Inc.* v. *Grigsby*, supra, 215 Conn. 350, the contractor claimed that there was an implied contract, and we concluded that an implied contract claim was barred by the requirement of § 20-429 (a) that the home improvement contract be in writing. In *A. Secondino & Son, Inc.* v. *LoRicco*, supra, 215 Conn. 340, the plaintiff contractor conceded that he was barred from recovering on his oral contract by § 20-429 (a). Likewise, the deviation from the precise specifications of § 20-429 (a) in *Wadia Enterprises, Inc.* v. *Hirschfeld*, supra, 224 Conn. 243, was more than merely technical in nature: the contract did not provide notice to the homeowners of their cancellation rights as required by § 20-429 (a) (6). Finally, in our most recent decision construing § 20-429, *Rizzo Pool Co.* v. *DelGrosso*, supra, 232 Conn. 680, we concluded that the contract was unenforceable because it did not contain a starting date or a completion date. Again, the defect in compliance amounted to more than a mere technicality and the plaintiff did not argue that the contract was in compliance despite the absence of those dates.

Thus, although we have frequently reiterated that compliance with the provisions of § 20-429 (a) is mandatory, we previously have not decided that what constitutes compliance under the act must be construed in

accordance with a letter-perfect compliance standard. Furthermore, it does not necessarily follow that whenever a statute is to be strictly construed in the sense that its provisions are mandatory, compliance with the statute's specific requirements must also be construed to require letter-perfect—rather than practical—compliance. See *Jefferson Garden Associates* v. *Greene*, 202 Conn. 128, 144, 520 A.2d 173 (1987) ("[s]trict construction [of a statute] does not . . . require ritualistic compliance with statutory or regulatory mandates").

The HIA is a remedial statute that was enacted for the purpose of providing the public with a form of consumer protection against unscrupulous home improvement contractors. *Caulkins* v. *Petrillo*, supra, 200 Conn. 720. The aim of the statute is to promote understanding on the part of consumers with respect to the terms of home improvement contracts and their right to cancel such contracts so as to allow them to make informed decisions when purchasing home improvement services. *Habetz* v. *Condon*, supra, 224 Conn. 239; 22 S. Proc., Pt. 17, 1979 Sess., p. 5797, remarks of Senator Audrey P. Beck. While the purposes of the statute are advanced by an interpretation that makes compliance with the requirements of § 20-429 (a) mandatory, it does not necessarily follow that advancement of the purposes also requires that the mandatory compliance with each subsection be technically perfect. Against this background, we examine the claimed defects.

In light of our prior interpretations of § 20-429 (a) and the legislative history of that subsection, we conclude that a construction that would require technically perfect compliance with each subdivision is inappropriate. Rather, an interpretation of that section that acknowledges and furthers the remedial purposes of the statute is in order. See *Doe* v. *Stamford*, 241 Conn. 692, 698, 699 A.2d 52 (1997).

In the present case, the alleged deviations from the precise specifications of § 42-135a (2) and (3) were of a minor and highly technical nature, and did not result in a lack of notice to the defendants that they had a right to cancel the contract within three days of the contract's signing. The defects claimed by the defendants were that "(1) 'as required by . . . § 42-135a [the contract] did not have the cancellation notice in duplicate so that there would be a tear-off sheet to return if the homeowner decided to cancel the contract' and (2) the cancellation notice failed to contain the date of the transaction and the date by which the defendants could cancel the contract on the notice of cancellation. The attorney trial referee concluded that these "highly technical" defects were insufficient to establish a breach of the HIA because they were insubstantial and meaningless in that "the purpose of the [HIA] was completely served by the [contract's] provisions."

In complying with the HIA by advising the defendants of their right to cancel the contract, the plaintiff furnished one copy of the contract, to which was attached one copy of the notice of cancellation, to Sandra Dowling, and furnished a second copy of the contract, to which also was attached one copy of the notice of cancellation, to Joseph Dowling. Thus, Sandra Dowling personally received only one copy of the notice of cancellation. The attorney trial referee determined, however, and it is undisputed, that Joseph Dowling was acting as the duly authorized agent of Sandra Dowling during all relevant times. General Statutes § 20-419 (6) provides in part that " '[o]wner' means a person who owns or resides in a private residence and includes any agent thereof. . . ." Therefore, in effect, two copies of the notice of cancellation were furnished to Sandra Dowling. Consequently, we conclude that two copies of the notice of cancellation were provided to the homeowner, Sandra Dowling, in practical compliance with

the requirements of the HIA. Furthermore, the two copies of the cancellation notice—one given to the titleholder, the other given to a resident of the property—were sufficient to constitute a "duplicate" of this notice of cancellation within the meaning of §§ 20-429 (a) (6) and 42-135 (a) (2).

Additionally, the plaintiff's failure to enter the required dates on the notice of cancellation did not, under the circumstances, constitute such a deviation from the precise specifications of the HIA as to compel the conclusion that the contract failed to comply with the HIA. The notice of cancellation form that was attached to the copies of the contract that the defendants received informed them that, "without any penalty or obligation," they could cancel the contract "within three business days from the above date." It might be argued that, because the "above date" was not filled in, the defendants did not know when their right to cancel would expire. The missing information, however, easily could have been gleaned from even the most cursory review of the contract. In immediate proximity to the space reserved in the contract for the homeowner's signature, the contract provided notice, in bold, capital letters, of the right to cancel the contract "any time prior to midnight of the third business day after *the date of this transaction*" (emphasis added), in addition to the same notice provided on the notice of cancellation form. The date of the transaction— meaning the date on which the contract was signed— was entered on the first page of the contract as the "[e]leventh day of January in the year of Nineteen Hundred and Ninety Three." From that information, the defendants logically could and reasonably should have deduced that they had the right, until midnight of the third business day after January 11, 1993, to cancel the contract and, thus, were fully advised of their right to cancel. Therefore, the failure to include these dates on

the notice of cancellation itself did not rise to the level of noncompliance with the HIA. Indeed, the attorney trial referee and the trial court concluded that the defendants received "precisely what they bargained for," and that the defendants would receive a windfall of more than $100,000 if they were allowed to invoke the HIA to repudiate the contract.

Under the circumstances, we conclude that the contract in the present case satisfied the requirements of § 20-429 (a) of the HIA. Therefore, the HIA does not bar the plaintiff from enforcing the contract against the defendants.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the trial court's judgment and to remand the case to the trial court for consideration of any remaining objections to the recommended judgment of the attorney trial referee.

In this opinion the other justices concurred.