[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action seeking to collect a balance due for renovations and additions performed by the plaintiff, Kevin MacMillan, a building contractor, at the home of the defendants, Harrison Scott Higgins and Linda Plank Higgins, located at 13 Huntzinger Lane, Greenwich. The plaintiff filed a complaint alleging that pursuant to a written contract dated February 21, 1992, he rendered services and furnished material to the defendants and that there is a balance due of approximately $45,000. The plaintiff also indicates that he filed a mechanic's lien on October 28, 1992 in the Greenwich Land Records. The plaintiff seeks a foreclosure of this lien and money damages. In July, 1998, a bond was substituted for the mechanic's lien. General Statutes § 49-37.
The defendants filed a "substituted"answer and counterclaim in which they agree that the plaintiff rendered services and furnished material at their home pursuant to a written contract but deny, however, that they owe the plaintiff any balance on the contract. They also filed special defenses that: (1) the plaintiff was operating under an assumed name without a certificate from the town, thus voiding the mechanics lien; (2) the plaintiff was not a registered home improvement contractor; and (3) the original agreement had been subsequently amended without a writing to that effect. The defendants also filed a counterclaim with two counts. In the first count, the defendants allege that the plaintiff failed to perform his obligations under the contract. In the second count of the counterclaim, the defendants reiterate their contention that the plaintiff was doing business under an assumed name without filing a trade name certificate.
The case was referred to Attorney Samuel V. Schoonmaker, III, an attorney trial referee, in accordance with General Statutes § 52-434 (a) and Practice Book § 19-2. The referee submitted a report finding that the contract between the parties did not comply with General Statutes § 20-418 et seq., the Home Improvement Act (HIA). The referee also found that the CT Page 12261 plaintiff had failed to prove that the defendants had acted in "bad faith" in invoking the HIA as a defense to the plaintiffs action. ". . . the plaintiff must prove that what was done during the working relationship between the parties was done with a dishonest purpose, deceit, malice or intent to take unconscionable advantage of the plaintiff. The undersigned cannot make that finding."
Pursuant to Practice Book § 19-12, the plaintiff moved to correct the referee's report.[1] The plaintiff asked the referee to find that the contract had been prepared by the defendants or their agents. The plaintiff also sought an additional finding that the defendants and their attorney were familiar with the HIA because of their prior involvement in a similar case.
In response to the plaintiffs motion to correct, the attorney trial referee declined to make any changes in his report or recommendation that judgment enter in favor of the defendants. The plaintiff then filed exceptions to the report in accordance with Practice Book § 19-13,[2] which relate to the referee's refusal to make the corrections to his report sought by the plaintiff in his motion to correct.
The plaintiff also filed objections to the report as authorized by Practice Book § 19-14.[3] The objections contend that the referee made findings of fact that are not based upon adequate evidence at the trial.
This court's scope of review of an attorney trial referee's report was discussed by the Supreme Court in Elgar v. Elgar,238 Conn. 839, 848-49, 679 A.2d 937 (1996). The court held that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court. . . or the Superior Court reviewing the findings of. . . attorney trial referees. See Practice Book § 443 [now Practice Book § 19-17]; . . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal CT Page 12262 quotation marks omitted.) See also Rapin v. Nettleton,50 Conn. App. 640, 646. 718 A.2d 509 (1998) ("Where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous"). (Internal quotation marks omitted.)
"The trial court must review the referee's entire report to determine whether the recommendations contained in it are supported by findings of fact in the report. It is also true that the trial court cannot accept an attorney trial referee's report containing legal conclusions for which there are no subordinate facts." Post Road Iron Works. Inc. v. Lexington DevelopmentGroup. Inc., 54 Conn. App. 534, 541, ___ A.2d ___ (1999).
Under the HIA. in the absence of bad faith, a homeowner is entitled to rescind a home improvement contract that fails to comply with the requirements in that act. Barrett Builders v.Miller, 215 Conn. 316, 321-22, 328, 576 A.2d 455 (1990).[4] The plaintiff contends that the defendants exhibited bad faith, which represents an exception to the rule. The "bad faith" exception requires one to establish "that the [defendant's] invocation of the HIA as a basis for [his] repudiation of the contract was in bad faith." Rizzo Pool Co. v. Del Grosso, 232 Conn.232 Conn. 666, 680, 657 A.2d 1087 (1995). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Bad faith means more than mere negligence; it involves a dishonest purpose." (Citations omitted; internal quotation marks omitted.) Habetz v. Condon, 224 Conn. 231, 237, 618 A.2d 506
(1992).
The alleged bad faith on the part of the defendants in this case, according to the plaintiff, consists of their agents, an architect and/or attorney, preparing the contract that did not comply with the HIA requirement of notice of cancellation rights. General Statutes § 20-429 (a)(6) requires that a home improvement contract "contain a notice of the owner's CT Page 12263 cancellation rights in accordance with the provisions of chapter 740 [Home Solicitation Sales Act]."[5] The second alleged example of bad faith was the claim that the defendants had previously also used the HIA to attempt to deny payment to a painting and wallpapering contractor as illustrated in Meadows v.Higgins, 249 Conn. 155, ___ A.2d ___ (1999).
Before this court rules on the attorney trial referee's report as to the HIA and the bad faith exception, the referee is requested to comment on the following three matters. First, isWright Bros. Builders, Inc. v. Dowling, 247 Conn. 218,720 A.2d 235 (1998), applicable to this case? Reference is to the cancellation clause discussed in that case where the Supreme Court ruled that a "perfect, ritualistic compliance" with the HIA was not required, Id., 229; that "letter-perfect — rather than practical — compliance" sufficed. Id., 23 1, and that compliance does not have to be "technically perfect." Id.
Second, what significance, if any . . . is attributable to the fact that the contract was not prepared by the contractor but rather by the homeowner and his agents? Third, what significance, if any, is attributable to the fact that the defendants and their attorney were familiar with and previously invoked the HIA as illustrated by Meadows v. Higgins, supra?
The referee and the parties agreed that the trial would be bifurcated and the issue of the bad faith exception to the HIA would be ruled upon first. The second stage of the trial, which should be scheduled as soon as possible because this case has been pending approximately six years, concerns the counterclaim filed by the defendants which alleges that the plaintiff did not perform his work adequately and was overpaid. Thus, this case is remanded to the referee for two reasons, the first for comment on the HIA and the bad faith exception as discussed above, and also to complete the trial regarding the defendants' counterclaim.
So Ordered.
Dated at Stamford, Connecticut, this 7th day of September, 1999.
William B. Lewis, Judge