[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter is before the court on the defendant's motion for summary judgment on the plaintiff's complaint on the basis of the defendant's first and second special defenses and on the fourth count of her counterclaims.
On March 1, 1999, the plaintiff, Michael DiChello, doing business as DiChello Building General Contracting, filed a certificate of mechanic's lien in the amount of $6,272 with the Farmington town clerk, claiming a lien on the condominium unit owned and occupied by the CT Page 11271 defendant, Joanne Rosenberg, located at 1228 B Green Briar, Farmington (home). On February 14, 2000, the plaintiff filed a one count complaint against the defendant, seeking, inter alia, foreclosure of the mechanic's lien, damages and attorney's fees pursuant to General Statutes §52-249. The complaint alleges that the plaintiff and the defendant entered into an agreement on November 1, 1998, whereby the plaintiff agreed to furnish materials and render labor to improve the defendant's home. The plaintiff further alleges that he completed performance of his work on December 4, 1998,[1] and the agreement provided for payment of $6,272 to the plaintiff, which the defendant has not paid. On March 14, 2000, the defendant filed her second amended answer, three special defenses and a five-count counterclaim.
Also on March 14, 2000, the defendant filed a motion for summary judgment (#104) together with a supporting memorandum of law[2] and several exhibits.[3] The defendant seeks summary judgment on the grounds that the agreements between the plaintiff and the defendant fail to comply with the material requirements of the Home Improvement Act (HIA), General Statutes § 20-418 et seq., and the Home Solicitation Sales Act (HSSA), General Statutes § 42-135a,[4] and violate the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes §42-110a et seq. On April 10, 2000, the plaintiff timely filed an objection to the defendant's motion,[5] to which the defendant subsequently filed a reply on April 14, 2000.[6] The court heard oral argument at short calendar on April 17, 2000,[7] and now issues this memorandum of decision.[8]
 DISCUSSION
"Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue of material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Rivera v. Double A Transportation, Inc.,248 Conn. 21, 24, 727 A.2d 204 (1999).
The following facts are undisputed. The plaintiff and the defendant CT Page 11272 entered into a written contact dated November 1, 1998, wherein the plaintiff agreed to furnish materials and services to improve the defendant's home and the defendant agreed to pay $15,639 in three payments of $5,213. (See Defendant's Exhibit A, contract). The defendant withheld $1000 from the final payment. The defendant and the plaintiff entered into an oral agreement on the telephone that was not reduced to a writing, for which the plaintiff submitted an invoice to the defendant in the amount of $5,272, dated January 20, 1999.[9] (See Defendant's Exhibit B, invoice). Thus, the plaintiff's mechanic's lien in the amount of $6,272, is the total outstanding sum due from these two agreements.
 I The Special Defenses
The defendant moves for summary judgment on the basis of two of her special defenses to the foreclosure action.
 A. The First Special Defense
The defendant in her first special defense asserts that the plaintiff's first contract is invalid and legally unenforceable due to violations of the HIA, General Statutes § 20-429(a)(6),[10] because it does not contain a proper cancellation notice that materially conforms to the requirements of HSSA, General Statutes § 42-135a.[11]
Specifically, the defendant argues the following defects in the HSSA requirements: (a) no cancellation notice appears proximate to the buyer's signature line or any where else in the contract per § 42-135a(1); (b) the attached notice of cancellation form was not in "duplicate" per § 42-135a(2); (c) no date of the transaction is entered on the notice of cancellation per § 42-135a(3); and (d) no cancellation date is noted on the notice of cancellation per § 42-135a(3).
In opposition, the plaintiff argues that the contract contains the eight essential elements of a home improvement contract pursuant to the HIA, General Statutes § 20-429(a).[12] Further, the plaintiff argues that although compliance with the provisions of the HIA is mandatory, our Supreme Court does not require "letter-perfect" compliance under the act and, therefore, the plaintiff is not barred by either the HIA or the HSSA from enforcing the contract against the defendant.
Both the plaintiff and the defendant rely upon the Wright case to support their respective positions. See Wright Bros. Building, Inc. v.Dowling, 247 Conn. 218, 720 A.2d 235 (1998). In Wright, the home improvement contractor plaintiff entered into a written agreement with the homeowner defendants to make improvements to the defendants' home. CT Page 11273 The agreement was subsequently amended both in written and oral form. Upon completion of the work, the defendants refused to pay the plaintiff's final bill, claiming it was more than the agreed upon price. The plaintiff filed a mechanic's lien on the defendants' property and then filed a complaint to foreclose the lien. The defendants filed an opposition motion based upon their special defenses alleging violations of the HIA and the HSSA requirements regarding defects in the contracts, including the notice of cancellation, and based on the fourth count of their counterclaims alleging a CUTPA violation for noncompliance with the HIA and the HSSA.
The Wright plaintiff tendered the contract in duplicate[13] and the contract contained a notice of cancellation in boldface type in immediate proximity to the space reserved in the contract for the homeowner's signature. Although our Supreme Court noted that "compliance with the provisions of § 20-429(a) is mandatory, we previously have not decided that what constitutes compliance under the act must be construed in accordance with a letter-perfect compliance standard. Furthermore, it does not necessarily follow that whenever a statute is to be strictly construed in the sense that its provisions are mandatory, compliance with the statute's specific requirements must also be construed to require letter-perfect — rather than practical — compliance." Id., 230-31.
The Wright Court examined the purpose of the HIA and determined "it was enacted for the purpose of providing the public with a form of consumer protection against unscrupulous home improvement contractors . . . [and] [t]he aim of the statute is to promote understanding on the part of the consumers with respect to the terms of home improvement contracts and their right to cancel such contracts so as to allow them to make informed decisions when purchasing home improvement services." Id., 231. TheWright Court held that "the plaintiff's failure to enter the required dates on the notice of cancellation did not . . . constitute such a deviation from the precise specifications of the HIA . . . because [t]he missing information . . . easily could have been gleaned from even the most cursory review of the contract. . . . [and] thus, [the defendants] were fully advised of their right to cancel." Id., 233. Therefore, the Court determined "the HIA [did] not bar the plaintiff from enforcing the contract against the defendants." Id., 234.[14]
In the present case, it is undisputed that the contract has a notice of cancellation with the required wording as provided in § 42-135a(2). The notice is provided in a single page. in regular font size and style on the third page of the three page contract. It is also undisputed that there is no cancellation notice located on the first page or in immediate proximity to the defendant's signature per § 42-135a(1). The CT Page 11274 cancellation notice of § 42-135a(1) informs the defendant in boldface type of a minimum size of ten points that she may cancel the transaction at any time prior to midnight of the third business day after the date of the transaction and to see the attached notice of cancellation form for an explanation of that right. See General Statutes § 42-135a(1). Section § 42-135a(2) requires the notice of cancellation form to be provided in duplicate with boldface type, noting the transaction date and the cancellation date and located in immediate proximity to the defendant's signature.
At issue is whether the noted omissions in the present case surpass mere technical noncompliance with the HIA and the HSSA and constitute significant material defects. The Wright case makes it clear that omission of the dates of the transaction and completion will not be considered a significant material defect as long as the missing information is provided in other parts of the contract. See Wright Bros.Building, Inc. v. Dowling, supra, 247 Conn. 233. Here, it is clear that the date of the transaction is November 1, 1998, as it appears twice on the first page of the contract. The completion date is also clearly listed on the first page in larger font lettering stating "Completion Date 12/4/98." These omissions do not rise to the level of noncompliance such as to bar the plaintiff from enforcing the contract against the defendant.
Similarly, the other defects are not material or significant. The contract in question is only three pages long. The first page marked "Proposal" and submitted on the plaintiff's letterhead, provides the terms of the contract, including: the start and completion dates; where the work is to be performed; a guarantee for the materials and work to be performed; and the signatures of the plaintiff and the defendant. The second page details in half a page of text what materials and services are included in the contact. The third and final page of the contract entitled "Notice of Cancellation" provides the cancellation form. While only one copy of the notice of cancellation is attached to the contract, all the information needed to inform the defendant of her rights to cancel the contact is clearly provided therein. As our Supreme Court noted, [t]he aim of the [HIA] is to promote understanding on the part of the consumers with respect to the terms of home improvement contracts and their right to cancel such contracts so as to allow them to make informed decisions when purchasing home improvement services." Id., 231.
The court finds that the first contract provides the requisite information. While compliance with the mandatory statutory provisions is not "letter-perfect," this contract provides practical compliance such that it meets the statutory requirements of the HIA and the HSSA.[15]
Accordingly, the defendant's motion for summary judgment on the basis of CT Page 11275 the first special defense is hereby denied.
 B. The Second Special Defense
The defendant in her second special defense asserts that the second contract is legally unenforceable because the plaintiff failed to provide a written contract in violation of the HIA, General Statutes §20-429(a)(1),[16] and the HSSA, General Statutes § 42-135a.[17]
Further, the defendant argues that the plaintiff is not entitled to receive equitable compensation pursuant to § 20-429(f) due to this noncompliance and because the defendant entered into both contracts with the plaintiff in good faith.[18]
In opposition, the plaintiff argues that the oral agreement is not a "home solicitation sale" in accordance with General Statutes §42-134a(a)(3)[19] because it was conducted and consummated entirely by telephone and, therefore, need not comply with the writing requirement of the HIA and the HSSA.
The HIA requires that a home improvement contract be in writing. See General Statutes § 20-429(a)(1). An oral home improvement contract is therefore invalid. See, e.g., Wright Bros. Building Inc. v. Dowling, supra, 247 Conn. 230 (the defendant could not prevail on his oral contract claim in light of the requirement of § 20-429(a) that the home improvement contract be in writing). Accordingly, the second contract between the parties fails to comply with the HIA. The HIA mandates, however, that all home improvement contacts are regulated by the provisions of the HSSA. See General Statutes § 20-429(e).[20]
In opposition to the defendant's argument that the second contract is legally unenforceable for lack of a writing, in violation of the HSSA, the plaintiff argues that the oral agreement is not a "home solicitation sale" in accordance with General Statutes § 42-134a(a)(3). The definition of a "home solicitation sale" in § 42-134a(a)(3) provides that it "does not include a transaction . . . conducted and consummated entirely by . . . telephone and without any other contact between the buyer and the seller or its representative prior to delivery of the goods or performance of the services. . . ." Here, it is undisputed that the second oral contract was initiated and entered into by a telephone call from the defendant when she was out-of-town to the plaintiff when he was at the defendant's condominium, working there as arranged under the first contract. The defendant argues that she did have "contact" with the plaintiff prior to the performance of the requested services, for she avers that although she traveled during the week for her employment, she was at home "at the end of the week and on weekends." (Defendant's Reply, Exhibit A, affidavit, ¶ 5). The defendant implies that the CT Page 11276 plaintiff was in her home during the times that she returned. The defendant fails, however, to aver that she had any contact with the plaintiff during the times she was back in town or to detail what kind of contact, if any, the parties had. The plaintiff failed to respond to the defendant's affidavit or to address the issue of contact.
In her reply, the defendant argues that Practice Book § 17-45
requires the plaintiff to file opposing affidavits to address the defendant's affidavit and that by choosing to not address her affidavit the plaintiff therefore admits to the facts asserted therein. Also, the defendant argues that the Unit Owner's Affidavit is inadmissible hearsay for the purposes of opposing summary judgment pursuant to Practice Book § 17-46.
"The adverse party [to the motion for summary judgment] prior to the day the case is set down for short calendar shall file opposing affidavits and other available documentary evidence." Practice Book § 17-45. "Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]." (Citations omitted; internal quotation marks omitted.) Inwood Condominium Assoc. v. Winer, 49 Conn. App. 694,697, 716 A.2d 139 (1998).
"To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents and show that there is a genuine issue for trial. If he does not so respond, summary judgment shall be entered against him." Id. "When a motion for summary judgment is supported by affidavits and other documents, an adverse party, by affidavit or as otherwise provided by [Practice Book § 17-45], must set forth specific facts showing that there is a genuine issue for trial, and if he does not so respond, the court is entitled to rely upon the facts stated in the affidavit of the movant." (Internal quotation marks omitted.)Harvey v. Boehringer Ingelheim Corp., 52 Conn. App. 1, 8, 724 A.2d 1143
(1999).
Here, the plaintiff filed no affidavit of his own but relied on the assertions of fact in his opposition memorandum to the defendant's motion. The plaintiff's only documentary evidence in support of his assertions is the defendant's Unit Owner's Affidavit. (See Plaintiff's Exhibit A, Unit Owner's Affidavit). The court finds that however CT Page 11277 inartfully phrased, the defendant's affidavit and the information contained therein provides the court with the existence of a genuine issue of material fact as to whether there was contact between the buyer and seller prior to the delivery of the goods or performance of the services of the oral agreement. Therefore, for the purposes of the motion for summary judgment. this oral transaction falls within the HSSA exception pursuant to General Statutes § 42-134a(a)(3).[21]
The court need not address merits of the defendant's argument that the plaintiff is not entitled to receive equitable compensation and the plaintiff's invocation of the "bad faith" exception to the HIA as a defense to the second contract's alleged violation of § 20-429(a) because the court finds there is a genuine issue of material fact whether an exception to the HSSA will apply.
 II The Fourth Count of the Counterclaims
The defendant also moves for summary judgment on the basis of the fourth count of her counterclaims. The defendant alleges that the plaintiff's actions constitute an unfair or deceptive trade practice in violation of CUTPA, premised upon General Statutes § 20-427(c), and seeks, inter alia, compensatory and punitive damages, attorney's fees and interest per General Statutes § 42-110g. The defendant alleges a CUTPA violation because the first and second contracts fail to comply with the HIA.
General Statutes § 20-427(c) provides in pertinent part: "A violation of any of the provisions of this chapter [400] shall be deemed an unfair or deceptive trade practice under subsection (a) of section42-110b."[22] Our Supreme Court holds that "the failure to comply with the HIA is a per se violation of CUTPA by virtue of General Statutes [§] 20-427(b), which provides that any violation of the Home Improvement Act is deemed to be an unfair or deceptive trade practice." (Internal quotation marks omitted.) Woronecki v. Trappe, 228 Conn. 574,579, 637 A.2d 783 (1994). Where a trial court finds the plaintiff's actions violated the HIA, the court is bound to render judgment for the defendant on the CUTPA count of her counterclaim. See id.; see also A.Secondino Son, Inc. v. LoRicco, 215 Conn. 336, 343, 576 A.2d 464
(1990).
As discussed in section I, the court finds that the plaintiff complied with the requirements of the HIA in the first contract and insufficient evidence of a violation of the HIA by not reducing the second contract to a writing because a genuine issue exists as to the applicability of an CT Page 11278 exception to the HSSA. Accordingly, the defendant is denied summary judgment on the CUTPA counterclaim on the basis of both the first and second contracts.
 CONCLUSION
As discussed herein, the defendant's motion for summary judgment is hereby denied.
BY THE COURT
Hon. Andre M. Kocay, J.