[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Victor Chaves, d/b/a Victor Chaves and Sons, brought this action to recover money he alleges the defendant, Sally Arthur, owes him for remodeling he did on her home.[1] In the revised two-count complaint, he asserts causes of action for breach of contract and unjust enrichment and seeks compensatory damages, costs, and other appropriate relief. The defendant filed an answer, special defenses, and a counterclaim.[2] In her special defenses, the defendant alleges, interalia, that the plaintiff cannot recover under either count of the complaint because the contract that forms the basis for his action is invalid and unenforceable in that it does not comply with the provisions of subsection (a) of General Statutes § 20-429 of the Home Improvement Act (HIA).
Before the court is the defendant's motion for summary judgment, which is premised on the above referenced special defense. In support of her motion, the defendant filed a memorandum, her own affidavit, and copies of four (4) documents pertaining to the work the plaintiff did on her home. The plaintiff filed an objection and a memorandum in opposition; he contends the contract materially complies with the HIA or, in the alternative, that the defendant acted in bad faith in asserting the special defense and is therefore precluded from using it to defeat this action.
The defendant asserts the contract is unenforceable because it does not include a notice of the homeowner's cancellation rights and does not state a starting or completion date as required by subdivisions (6) and (7) of § 20-429 (a) respectively. At oral argument, the plaintiff conceded the contract was deficient in those particulars but maintained the contract was enforceable nevertheless because it materially complied with § 10-429 (a). Section 20-429 (a) provides in pertinent part:
No home improvement contract shall be valid or enforceable against an owner unless it: (1) is in writing, (2) is signed by the owner and the CT Page 2578-b contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date.
Referring to § 20-429 (a), our Supreme Court has said: "[T]his court consistently has held that the requirements of that section are mandatory and that a contractor is precluded from enforcing a home improvement contract that does not satisfy its requirements." WrightBrothers Builders, Inc. v. Dowling, 247 Conn. 218, 228 (1998). "Significantly, in concluding that the requirements of § 20-429 (a) are mandatory, we have twice used `strict compliance' language; see RizzoPool Co. v. DelGrosso, [232 Conn. 666, 680 (1995)]; Barrett Builders v.Miller, [215 Conn. 316, 326 (1990)]. We, however, have never applied that section so as to require perfect, ritualistic compliance as a condition precedent to recovery by a contractor." Wright Brothers Builders, supra, at 229. The Court concluded, "[A] construction that would require technically perfect compliance with each subdivision is inappropriate. Rather, an interpretation of that section that acknowledges and furthers the remedial purposes of the statute is in order." Id. at 231. In WrightBrothers Builders, Inc., the notice of cancellation given the homeowner did not provide her with a duplicate tear-off sheet to be used to cancel the contract, it failed to include the date of the transaction, and it did not include the date by which the defendants could cancel the contract. The Court characterized these omissions as "minor" and "highly technical" and noted they "did not result in a lack of notice to the defendants that they had a right to cancel the contract within three days of the contract's signing." Id., at 232. It noted that, although the notice of cancellation was not in the form of a tear-off sheet, it did provide her with two copies of the notice and further noted that, as to the missing dates, "[t]he missing information . . . easily could have been gleaned from even the most cursory review of the contract."247 Conn. at 233.
The Court distinguished such defects from the particular deficiencies at issue here, and specifically noted it had previously held defects such as at issue before this Court were "more than merely technical in nature." Id., at 230. "[T]he deviation from the precise specifications of § 20-429 (a) in Wadia Enterprises, Inc. v. Hirschfeld, [224 Conn. 240,243 (1992)], was more than merely technical in nature; the contract did not provide notice to the homeowners of their cancellation rights as required by § 20-429 (a)(6). Finally, in . . . Rizzo Pool Co. v.DelGrosso, supra, 232 Conn. 680, we concluded that the contract was unenforceable because it did not contain a starting date or a completion CT Page 2578-c date. Again, the defect in compliance amounted to more than a mere technicality and the plaintiff did not argue that the contract was in compliance despite the absence of those dates." 247 Conn. at 230. See also Kronberg Brothers, Inc. v. Steele, 72 Conn. App. 53, 59-60, cert. denied, 262 Conn. 912 (2002) (plaintiff's failure to include transaction date in the contract and transaction and cancellation dates in notice of cancellation and its failure to position notice in immediate proximity to the space reserved in the contract for the signature of the buyer constitutes material noncompliance with the act's requirements).
In the present case, it is undisputed that the contract did not contain a notice of cancellation or starting and completion dates. Moreover, this information is not contained elsewhere in the documents provided to the court. The contract in question is not in material compliance with the requirements of § 20-429 (a). As our Supreme Court concluded inBarrett Builders v. Miller, 215 Conn. 323 (1990), a contractor who fails to materially comply with the HIA is also precluded from recovering under the quasi-contract theory of unjust enrichment; thus, both causes of action alleged by the plaintiff are implicated by such non-compliance.[3]
The plaintiff next asserts the defendant cannot recover because the defendant acted in bad faith in wanting to assert the unenforceability of the contract and in asserting a counterclaim based upon the very same contract she claims is invalid. There is in this state decisional law that holds proof of a homeowner's bad faith will preclude that homeowner from hiding behind the protection of the HIA. See e.g. Habetz v. Condon,224 Conn. 231, 237 (1992). The Court there defined bad faith as implying both "actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an actual mistake as to one's rights or duties, but by some interested or sinister motive." (Citation omitted.)Id. Habetz involved a homeowners' suit against a contractor under the HIA for an alleged breach of contract arising out of the construction of a two-story addition to a home. The defendant-contractor filed a counterclaim seeking the unpaid balance owed him under the original written contract and a later written proposal regarding extras. Despite repeated requests by the contractor, the homeowners had never signed the proposal (though they had signed the original contract). The homeowners asserted as special defenses to the counterclaim that § 20-429 (a) was not satisfied because the original contract provided no cancellation provision and that they had not signed the proposal for extras. The trial court found non-compliance with the HIA but also concluded evidence of bad faith by the homeowners and rendered judgment for the plaintiffs on their breach of contract claim only[4] and for the contractor on both the original contract and the later proposal for extras. The Supreme CT Page 2578-d Court affirmed the judgment and stated, "To deny the contractor any opportunity of recovery after he has completed his end of the bargain ifhe has persuaded the trier of fact that a statutory remedy is being invoked by a homeowner in bad faith would be to countenance a gross injustice and indeed to encourage its perpetration and to assure its success." (Emphasis added.) 224 Conn. at 240.
"It is the burden of the party asserting the lack of good faith to establish its existence and whether that burden has been satisfied in a particular case is a question of fact." Warner v. Konover, 210 Conn. 150,156 (1989). The plaintiff presented the court no evidence on the issue of bad faith; instead, he relies on the allegations the defendant waited until the job was completed before raising the alleged defects in the contract and that the defendant relied on the same contract to support her counterclaim.[5] The plaintiff has the burden of proof on this issue. In Wadia Enterprises, Inc. v. Hirschfeld, 224 Conn. 240 (1992), our Supreme Court affirmed the Appellate Court's affirmance of the trial court's granting of the defendant's motion for summary judgment as to the plaintiff's bad faith claim. It found none of the acts alleged (which included the defendants' withholding of final payment, their forcing of the plaintiff to extend credit for change orders under provisions of the contract the defendants sought to repudiate, and their enforcing of the daily damages clause) indicated a "dishonest purpose." Id., at 248. In fact, that Court found the very fact the defendants there had their architect and New York attorneys draft the contract in issue did not indicate bad faith in the absence of any allegation or proof the attorneys intentionally omitted the required notice of cancellation rights in order to have an escape hatch. Id. As to the plaintiff's claim it was bad faith for the defendant to wait until the job was completed before raising the omitted notice, the Court stated, "There is nothing dishonest or sinister about homeowners proceeding on the assumption that there is a valid contract, enforcing its provisions, and later, in a defense to the suit by the contractor, upon learning that the contract is invalid, then exercising their right to repudiate it." (Citation omitted.) Id. at 249. Regarding the plaintiff's claim it is bad faith for the defendant to rely on the same contract to support her counterclaim, parties are permitted to advance alternative and even inconsistent theories of liability in their pleadings. See Danko v. RedwayEnterprises, Inc., 254 Conn. 369, 379 (2000).
Moreover, "[i]t is not enough . . . for the [party opposing a motion for summary judgment] merely to assert the existence of a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact." Maffucci v. Royal Park Ltd. Partnership,243 Conn. 552, 554 (1998). Thus, although the Supreme Court has held CT Page 2578-e "that issues of motive, intent and good faith are not properly resolved on a motion for summary judgment . . . [w]e have also held, however, that even with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of material fact." WadiaEnterprises, Inc. v. Hirschfeld, supra, 224 Conn., at 250. It accordingly rejected the notion that, since bad faith was a question of fact, rejection of the defense could not occur by way of summary judgment. The Appellate Court's affirmance of the trial court's granting of summary judgment on the issue of bad faith was upheld. Id.
Summary judgment enters for the defendant on the plaintiff's complaint.
B. J. Sheedy, J.