WARREN STUART MAHAFFEY and KRISTINA MAHAF-
FEY, Appellants, v. INVESTOR'S NATIONAL SECU-
RITY CO. and MORTGAGE FINANCE CORP.,
Respondents.

No. 17143

December 30, 1987                    747 P.2d 890

*Peter L. Flangas,* Las Vegas, for Appellants.

*Jolley, Urga, Wirth & Woodbury,* and *Troy E. Peyton,* Las
Vegas, for Respondents.

## OPINION

*Per Curiam:*

This is an appeal from a district court judgment denying an injunction against foreclosure of appellants' home.

Appellants Warren and Kristina Mahaffey entered into a home insulation contract in March, 1980. The Mahaffeys agreed to pay for the work by means of installment payments. The note which set out the schedule of payments was secured by a deed of trust on their home. The insulation company, Five Star Solar Screens (Five Star), sold the note to respondent Mortgage Finance Corp., a subsidiary of respondent Investor's National Security Co. When Five Star failed to perform its duties adequately under the contract, the Mahaffeys refused to make any payments. Foreclosure proceedings were then instituted by Mortgage Finance Corp. to collect the money owed.

The district court found that the signing of the contract was fraudulently induced. Substantial evidence in the record supports this finding. A salesman from Five Star persuaded the Mahaffeys to sign by making several false or misleading representations. He told them their fuel consumption would be cut in half; their home would be used for advertising and promotional purposes, and they would be financially compensated for such use; the first payment would not be due until September; and finally, the total cost would be $5,289. Not one of these promises was ever fulfilled.

Although the Mahaffeys rightfully had at least three days to rescind the contract,[1] Five Star employees arrived at their home the next day and completed most of the work ever done. The workmen left the job half completed, with large holes in the interior walls and improperly installed "solar screens" on the windows and doors. One of the workmen falsely assured Mr.

---

[1] A minimum three-day rescission period is mandated by federal law. 15 U.S.C. § 1635(a). Pursuant to § 1638(a), Five Star was required to advise the appellants of the total finance charge and the annual percentage rate of interest. The contract could have been rescinded at any time prior to the fulfillment of these disclosure requirements. *See* 15 U.S.C. § 1635(a).

Mahaffey that insulation had been poured into the walls from the attic. This was physically impossible, since a solid block of wood was built into the top of each wall. This block of wood is called a "firebreak" and is a normal part of home construction, a fact which should have been well known to these professional insulation contractors. Additionally, the heater blanket and roof turbines promised by the salesman were never delivered.

Despite this state of affairs, another Five Star salesman coerced the Mahaffeys into signing a completion certificate, note, and deed of trust two weeks after they signed the initial bid order. When the Mahaffeys resisted signing the documents, the salesman told them the original contract was worthless, and threatened them with "trouble" and "skyrocketing interest rates" unless they signed immediately. Under the pressure thus applied, they signed. The next day, Five Star sold the contract to Mortgage Finance Corp. Five Star never finished the job at the Mahaffey residence, and none of the promises made by the salesmen were ever kept. In fact, it was later discovered that the insulation which had been installed was completely inadequate. The net result was that the Mahaffeys received no benefit from the agreement, which nevertheless obligated them to pay a total of $8,832.96.

Upon these facts, we conclude that the district court was correct in finding that the contract was fraudulently induced. We further agree with the district court's finding that the Mahaffeys were entitled to assert any defenses against Mortgage Finance Corp. which they could have asserted against Five Star. First, we note the contract plainly states on its face that any buyer of the note takes it subject to all claims and defenses available against the seller.[2] Mortgage Finance Corp. thereby had notice of possible claims and defenses, and was not a holder in due course. NRS 104.3302(1)(c). Since it was not a holder in due course, the Mahaffeys could assert any of their defenses, including fraudulent inducement and failure of consideration, against payment of the note. NRS 104.3306.

Additionally, we note that federal law also applies to this type of home improvement contract. *See* Truth in Lending Act, 15 U.S.C. § 1601 (1982); Engle v. Shapert Const. Co., 443 F.Supp. 1383, 1385 (MDPA 1978). The notice of claims and defenses which appears on the contract is mandated by federal law. 16 C.F.R. § 433.2 (1987). This law was enacted by Congress to

---

[2]The following notice was printed on page 2 of the contract:

Notice: Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof.

protect ordinary homeowners from the disastrous effects of securing home improvement contracts by trust deeds. We agree that such protection is necessary. When a fraudulent contractor sells a note secured by a deed of trust on someone's home, and then goes into bankruptcy, as happened in this case, the buyer of the note should not be protected by law from its professed ignorance of the contractor's fraudulent scheme.[3]

In spite of the above findings, the district court ruled in favor of Mortgage Finance Corp. on the basis of estoppel. We cannot agree with this decision, and therefore, reverse that part of the judgment. Estoppel cannot be used to uphold a fraud. 3 Pomeroy's Equity Jurisprudence, § 8.13 (5th ed. 1941); Sanguinetti v. Strecker, 94 Nev. 200, 577 P.2d 404 (1978); Xanthos v. Board of Adjustment, 685 P.2d 1032 (UT 1984). It is an equitable doctrine, and as such can only be used to protect the innocent. Newton v. Hornblower, Inc., 582 P.2d 1136 (Kans. 1978). One who seeks equity must do equity, and we cannot agree that the appellee has done equity in this case. The record reveals that Mortgage Finance Corp. was made aware of the unfinished condition of the home before it bought the note. Its representative vouched for the trustworthiness of Five Star, and assured the Mahaffeys that the work would be completed. When further complaints were made, Mortgage Finance Corp. refused to pursue recourse to Five Star on the paper, as it had the legal right to do; rather, Mortgage Finance Corp. chose to institute foreclosure proceedings against the Mahaffeys. Although it offered to make repairs, the offer was accompanied by a demand for the full amount of back payments. This course of conduct, coupled with the underlying fraudulent scheme, does not support a finding of equitable estoppel which would prevent the Mahaffeys from asserting their substantial and fully supported defenses.

We conclude that, by virtue of fraudulent inducement and failure of consideration, the contract is null and void. We fully agree with the decision of the district court on the issue of fraud, and with regard to the availability of defenses. We must, however, reverse the judgment in favor of respondent, because the

---

[3]Five Star did not declare bankruptcy until some time in 1984. This was long after the suit was filed in April, 1981, putting Mortgage Finance Corp. on notice of serious problems with the Mahaffey job. At the hearing, respondent admitted that the contract was purchased subject to recourse. In spite of its legal right to do so, respondent did not require Five Star to repurchase the note. It thereby failed to pursue the substantial protection made available to it by its own negotiations and commercial law. Instead, it proceeded against the appellants.

same is premised on an insupportable finding of equitable estoppel in favor of respondent Mortgage Finance Corp. We therefore remand the matter to the district court with instructions to enter a permanent injunction in appellants' favor, and to allow appellants any costs and all further relief to which they may be entitled as prevailing parties.

Upon the filing of a timely and proper cost bill with the clerk of this court, appellants will be allowed costs on appeal as provided in NRAP 39(c).[4]

GUNDERSON, C. J., and STEFFEN, YOUNG, and SPRINGER, JJ., concur.

---

[4]MOWBRAY, J., recused himself and took no part in the determination of this case.