[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION[1]
Can a home improvement contractor properly registered under the Home Improvement Act, General Statutes § 20-418 et seq. (the Act), enter into a home improvement contract which is valid and enforceable through the agency of an unregistered home improvement salesman? If such a contract is invalid and unenforceable by the contractor, is the present holder of a retail installment contract which financed the home improvement contract precluded from foreclosing on the mortgage given as security, when the homeowners fail to make the required installment payments?
These are the questions raised by the plaintiffs' motion for summary judgment on the first (declaratory judgment) and fifth (unfair trade practice) counts of the Second Amended Revised Complaint filed on December 26, 2001 (#125 in the file) and on the counterclaims filed by the defendants, Northeast Specialty Corporation d/b/a NESCOR and NESCOR, Inc. (collectively referred to hereafter as NESCOR) (#115) and TMS Mortgage, Inc. d/b/a The Money Store (TMS) (#128).
The case arises out of the performance by NESCOR of a contract to install vinyl siding and windows on the plaintiffs' home. The plaintiffs claim, in the counts of their complaint that are not the subject of this motion, that NESCOR misrepresented that the improvements to be made would effect substantial savings in their energy costs, which did not come to fruition, and that the work, itself, was defectively performed. In those counts they seek damages for breach of express and implied warranties, for fraud and for a violation of the Connecticut Unfair Trade Practices Act (CUTPA). CT Page 4131
The following facts material to the issues raised by the instant motion are not in dispute:
1. NESCOR salesman, Steven Vlohotis, visited the plaintiffs at their home to speak with them about entering into a home improvement contract (the contract) to install vinyl siding and windows.
2. Vlohotis is prepared the contract after the plaintiffs agreed to retain NESCOR as a contractor.
3. Vlohotis signed the contract with the plaintiffs on behalf of NESCOR.
4. Vlohotis was not an officer or director of NESCOR when the contract was signed.
5. Vlohotis was not registered with the State of Connecticut as a home improvement salesman when the contract was signed, but NESCOR was registered as a home improvement contractor.
6. The plaintiffs signed two retail installment contracts (the consumer credit contracts) to pay for the home improvements. The first of the two was assigned by NESCOR to First Consumer Credit, LLC (FCC), which reassigned it to the co-defendant here, TMS.[2]
7. The consumer credit contract now held by TMS contains the following language:
 Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the Seller of the goods or services pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor.[3]
8. The other consumer credit contract is held by NESCOR and contains the same language.
9. The plaintiffs, complaining of fraud by NESCOR in inducing them to enter into the contract and defects in NESCOR's performance under the contract, stopped making payments under both consumer credit contracts.
 I
The dispute among the parties in the present case focuses on the CT Page 4132 interpretation of § 20-429 (a) of the Act, which provides as follows:
 No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or a registered contractor. (Emphasis added.)
"In construing § 20-429 (a) this court consistently has held that the requirements of this section are mandatory rather than permissive and that a contractor is precluded from enforcing a home improvement contract that does not satisfy its statutory requirements." WrightBros. Builders, Inc. v. Dowling, 247 Conn. 218, 228 (1998).
Although the plaintiffs' motion is based on a reading of this section of the Act, it implicates several other provisions. For example, a person cannot hold himself out to be a home improvement salesman without first obtaining a current certification of registration from the Department of Consumer Protection. General Statutes § 20-420 (a).[4]
Furthermore, no contractor may employ any salesman for the purpose of procuring business from an owner or allow any person to act as a salesman on its behalf unless the salesman is a registered home improvement salesman. General Statutes §§ 20-420 (b)[5] and 20-427 (b)(7)[6]. The employment of an unregistered salesman, like all other violations of the Act, "shall be deemed an unfair or deceptive trade practice under subsection (a) of § 42-110 (b)", the Connecticut Unfair Trade Practices Act (CUTPA). General Statutes § 20-427 (c)(2).
These provisions of the Act and the many others that establish "registration requirements for both home improvement contractors and home improvement salesmen, see General Statutes §§ 20-420 through 20-427, demonstrate that the primary purpose of the statute, "to protect consumers from unscrupulous contractors", Wright Brothers Builders, Inc.v. Dowling, supra, 247 Conn. 229, was to be achieved in part through oversight of such contractors and salesman so as to prevent, by way of investigations and revocation and suspension of or refusal to issue CT Page 4133 licenses, inter alia, "conduct . . . likely to mislead, deceive or defraud the public. . . ." General Statutes § 20-426 (a).
 II
The plaintiffs are seeking summary judgment on counts one and five of their complaint and on NESCOR's counterclaim on the ground that the contract is unenforceable under the Act. Summary judgment shall be granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. Since there is no genuine issue as to any material fact, the question is whether the plaintiffs are entitled to judgment on counts 1 and 5 of their complaint and on the counterclaims as a matter of law.
The plaintiffs argue that they are entitled to a declaratory judgment that the contract is invalid and unenforceable because, contrary to § 20-429 (a)(8), it was "entered into" by Steven Vlohotis, an unregistered home improvement salesman, who was neither an officer or director of NESCOR nor a registered home improvement contractor, himself. Both NESCOR and TMS rejoin that Vlohotis' failure to register is immaterial. The contract was "entered into" not by him but by NESCOR, a registered contractor, through the agency of Vlohotis, thus satisfying the statute's requirement that a home improvement contract must be entered into by a registered contractor.
While the court accepts the defendants' premise that it was not Vlohotis who "entered into" the contract, it cannot accept its conclusion that NESCOR's use of Vlohotis to "enter into" the contract as its agent created a valid and enforceable contract.
To "enter into" a contract means to become a party to that contract, to assume an obligation under the contract. Black's Law Dictionary (7th
Ed. 1999). See, e.g., Levey Miller Maretz v. 595 Corporate Circle,258 Conn. 121, 126 (2001); Gianetti v. Norwalk Hospital, 64 Conn. App. 218,229 (2001). Clearly, the party to the contract with the plaintiffs, with an obligation to perform according to its terms, was not Vlohotis individually. Whether he had authority to "enter into" a contract on NESCOR's behalf, however, is questionable.
In support of NESCOR's Opposition to the motion for summary judgment William Madara, its corporate office manager, swears in an affidavit that, at the time he dealt with the plaintiffs, Vlohotis was NESCOR's agent and authorized by NESCOR to enter into the contract with the plaintiffs. When the court examines the agreement between Vlohotis and NESCOR, however, which was also submitted with NESCOR's opposition, two CT Page 4134 things become clear. First, Vlohotis was not only not an officer or director of NESCOR but he was not even an employee; by the terms of the agreement he was a "self-employed sub-contractor". Second, nowhere in the agreement is there any authorization of Vlohotis to assume binding contract obligations on behalf of NESCOR, i.e., to "enter into" contracts such as the one with the plaintiffs. Finally, the contract which is the subject of this action contains the following disclaimer, punctuated by an exclamation point: "Subject to Management Approval!". Nothing in the record indicates that the "management" of NESCOR ever approved the contract. On the basis of this evidence the court questions whether NESCOR ever authorized Vlohotis to "enter into" the contract on its behalf.
Even if Vlohotis was authorized to do so, permitting a registered contractor to satisfy the statute through the agency of an unregistered salesman would undermine the Act's regulatory purpose and be inconsistent with its remedial intent. In employing Vlohotis to call on the plaintiffs as its salesman NESCOR was performing an illegal act, one explicitly prohibited in two provisions of the Act, one which is a per se unfair trade practice, and one which carries criminal penalties.[7] Yet NESCOR argues that it should be permitted to bind the plaintiffs to a contract not only sold to them by an illegally employed salesman but "entered into" on its behalf by that same salesman. If the court were to adopt the defendants' approach to § 20-429 (a)(8), a home improvement salesman would never have to register as long as he was working for a registered contractor. This would obviously thwart the regulatory purpose behind the requirement that all salesman register, with certain exceptions not present here.
In effect, the defendants' argument would create an agency exception to the registration requirement that was not provided for by the legislature in adopting the Act. The General Assembly unambiguously provided that only an individual or partner or an officer or director of a corporation registered as a contractor is exempted from the obligation to register as a salesman. "In the absence of ambiguity, courts cannot read into statutes, by construction, provisions which are not clearly stated. . . . Moreover, courts should not imply exceptions to a statute which the legislature did, not prescribe by word or implication." (Internal quotation marks and internal citations omitted.) Caulkins v. Petrillo,200 Conn. 713, 7/19 (1986). Nowhere in the Act does the legislature state or imply that salesman acting as agents of registered contractors are excepted from registration requirements.
"The process of statutory interpretation involves a reasoned search for the intention of the legislature." State v. Ledbetter, 240 Conn. 317, 320
(1988). The Act is a remedial statue that was enacted for the purpose of CT Page 4135 providing the consumer with protection against unscrupulous home improvement contractors. Caulkins v. Petrillo, supra, 200 Conn. 720. As such, it is to be liberally construed to effectuate its purpose. RizzoPool Company v. Del Grosso, 232 Conn. 666, 678 (1994). "It is an elementary rule of construction that statutes should be considered as a whole, with a view toward reconciling their separate parts in order to render a reasonable overall interpretation; the application, moreover, of common sense to the statutory language is not to be excluded. . . . We must avoid a consequence which fails to attain a rational and sensible result which bears most directly on the object which the legislature sought to obtain." (Internal quotation marks and internal citations omitted.) Builders Service Corp. v. Planning and Zoning Commission,208 Conn. 267, 276 (1988).
Reading the Act as a whole and in a way to effectuate its purpose, the court cannot find that a registered contractor can "enter into" a contract through the agency of an unregistered salesman, and an attempt to do so results in a failure to comply with § 20-429 (a)(8) and a contract which is invalid and unenforceable. Accord: Bustamante v. 43Corp., Superior Court, judicial district of New London at Norwich, Docket No. 119948 (Oct. 24, 2000, Hurley, J.) (a home improvement contract signed and negotiated by an unregistered salesman is unenforceable under § 20-429 (a)(8)); Cantillon v. Tripodi, Superior Court, judicial district of Waterbury, Docket No. 091525 (Sept. 26, 1990, Langenbach, J.) (same). Otherwise, the remedial and regulatory purpose of the Act would be seriously undermined by allowing registered contractors to evade in a wholesale manner the registration requirement for salesmen.
The defendants' fall back position is that, even if there was a failure to comply with Act, it did not amount to a "material noncompliance", a necessary finding by the court before a contract is voided. See WrightBros. Builders, Inc. v. Dowling, supra, 247 Conn. 229. The Supreme Court does not require "perfect, ritualistic compliance" as a condition precedent to enforcement of a home improvement contract. Id. The defect in compliance must amount to more than a "mere technicality". Id., 230.
NESCOR argues in its brief that it "substantially complied" with §20-429 (a) because there was a written agreement between the parties, containing the date of the transaction, notice of the owner's cancellation rights and other terms required by the Act. NESCOR, however, is mistaken in its belief that whether there was "material noncompliance" is determined by looking at the requirements of the Act with which the contract did comply under § 20-429 (a) In determining "material noncompliance" with § 20-429 (a) the inquiry focuses on where the contract fell short of compliance and then determines whether those failures amounted to material noncompliance. Wright Bros.CT Page 4136Builders, Inc., v. Dowling, supra, 247 Conn. 228.
For example, in Caulkins v. Petrillo, supra, 200 Conn. 718-719, where an oral contract had been fully performed by the contractor, the Court declined to find an exception to the requirement of § 20-429 (a)(1) that a home improvement contract be in writing to be valid and enforceable. The Court held that there was "material noncompliance" because the contract was not in writing, and the Court further reasoned that allowing an oral contract to be enforced would significantly undermine remedial purposes of the legislation. In the present case NESCOR procured a contract through an unregistered salesman, and one of the key remedial aspects of the Act is registration of both contractors and salesman. Therefore, under the same reasoning as employed in Caulkinsv. Petrillo, supra, NESCOR's failure to use a registered salesman to procure a contract amounts to "material noncompliance" because to enforce the contract not entered into by a registered salesmen, under the defendants' implied agency exception to the registration requirement, would significantly undermine the remedial purposes of the statute.
NESCOR's failure to use a registered salesman was not "minor and highly technical". Wright Bros. Builders, Inc., v. Dowling, supra, 247 Conn. 232. The Act flatly prohibits contractors from employing unregistered salesmen. General Statutes §§ 20-420 (b), 20-427 (b)(7).[8] It makes the violation of that prohibition a criminal offense, General Statutes § 20-427 (c)(1)[9], as well as a per se unfair and deceptive trade practice under CUTPA. General Statutes § 20-427 (c). It would be at best incongruous, in the face of these provisions of the Act, to find "immaterial" NESCOR'S employment of an unregistered salesman, Vlohotis, not just to induce the plaintiffs to engage its services but to "enter into" a contract on its behalf, thereby creating a binding obligation on the part of the plaintiffs.
The facts material to a determination of whether the contract was valid and enforceable are not in dispute, and the plaintiffs are entitled to judgment as a matter of law. Accordingly, the court finds that NESCOR's "material noncompliance" with § 20-429 (a)(8) renders the home improvement contract invalid and unenforceable and precludes it from enforcing the consumer credit contract against the plaintiffs.
 III
The plaintiffs are also seeking, summary judgment against TMS on its counterclaim, which seeks to foreclose upon the plaintiffs' home because of their default under the consumer credit contract now held by TMS. They argue that summary judgment is appropriate because NESCOR's violation of the Act, along with the "Preservation of Consumer Claims and Defenses" CT Page 4137 language within the consumer credit contract, bar any recovery by TMS.
TMS's first line of defense is to argue sweepingly that the only thing invalid and unenforceable under the Act, assuming there has been a violation of § 20-429 (a), is the home improvement contract, itself, not the consumer credit contracts by which the home improvements were financed. To accept this argument would be to denude consumers like the plaintiffs here of protection under the Act and to render the "Preservation" language ineffectual. The consumer obligation that sellers like NESCOR and lenders like TMS count on enforcing is the obligation to make payments on the consumer credit contracts which financed the improvements. Conversely, the consumer claiming that a promised home improvement was not performed or substandard or failed to achieve the results promised "may wish simply to minimize his loss by withholding payments". Quarterly Report, 42 Consumer Fin.L.Q. 124, 131 (1988). It is only by giving consumers like the plaintiffs a shield against enforcement of these consumer credit contracts that the Act's declaration that a contract is invalid and unenforceable has any meaning.
Thus, in Mahaffey v. Investor's National Security Co., 747 P.2d 890
(Nev. 1987), the Supreme Court of Nevada ordered the trial court to enjoin permanently foreclosure on the plaintiffs' home by the defendant, who took from the seller under a home insulation contract an assignment of a note signed by the plaintiffs and secured by a deed of trust on their home. Noting that the consumer credit contract contained language identical to the language in the contract held by TMS here, the Court held that the defendant was not a holder in due course of the note, and "the Mahaffeys could assert any of their defenses . . . against payment of the note". Id., 892.
TMS sets forth two additional arguments against the plaintiffs' motion. First, TMS argues by analogy to Connecticut case law that has held that homeowners cannot preclude enforcement of subcontractor claims where the general contractor has violated the Act. See Meadows v.Higgins, 249 Conn. 155 (1999); O'Donnell v. Rindlfeish, 13 Conn. App. 194
(1988). TMS maintains that, if allowing subcontractors to enforce their contracts against a homeowner is consistent with the Act, allowing lenders and holders of mortgages and consumer credit contracts to enforce their claims must also be consistent. Second, TMS argues that the "Preservation of Claims and Defenses" language within the consumer credit contract it holds does not extend to TMS liability for violations of the Act because, otherwise, that language would create liabilities that do not otherwise exist under state or federal law.
TMS's subcontractor analogy is inapposite for two reasons. First, a subcontractor stands in a completely different contractual position with CT Page 4138 the homeowner than does a lender like TMS. A subcontractor is not in privity of contract with the owner, whereas the lender is in privity with the owner. In this case the contract between the plaintiffs and TMS has a "Preservation of Consumer Claims and Defenses" clause that controls the relationship and the means of recovery between the parties. Subcontractors and owners do not have such provisions in their contracts.
Second, the issue in the cases cited by TMS was whether the homeowner could preclude enforcement of the subcontract under the Act's registration requirements, whereas in the present case the issue is whether the homeowner can preclude enforcement of a credit contract through its own contract terms, specifically the "Preservation of Consumer Claims and Defenses" clause.
TMS's second argument is also unpersuasive. Mayfield v. GeneralElectric Capital Corp., U.S. District Court, Docket No. 97 Civ. 2786 (S.D.N.Y. Mar. 31, 1999), 1999 U.S. Dist. LEXIS 4048., the only case it cites in support of this position, held that "Preservation of Claims and Defenses" language would not apply to subsequent assignees for Truth In Lending Act (TILA) violations because expanding liability would "override the express language" of the TILA. Id., 16. The express language referred to by the court is the language in the TILA, 15 U.S.C. § 1641 (a), that provides, in pertinent part, "A civil action that can be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement."
In Mayfield expanding assignee liability to a holder would have violated the express terms of the TILA because the violation of the TILA was not apparent on the face of the "disclosure statement". In the present case the Act does not expressly provide for a limitation of assignee liability within the statute. Moreover, the holding inMayfield is limited to assignee liability arising out of a violation of the TILA and not assignee liability arising out of a violation of all statutes.
The language appearing in the consumer credit contract held by TMS; viz., that the contract is "subject to all claims and defenses which" the plaintiffs could assert against NESCOR, is mandated in all such contracts by the FTC "to prevent the seller of goods from cutting off the consumer's right to assert claims and defenses against the seller's assignee". Quarterly Report, 42 Consumer Fin.L.Q. 124, 128 (1988). Its inclusion alters the content of the contract between the consumer and the holder of the consumer credit contract to protect consumers from the holder-in-due-course doctrine.[10] Id., 129. Its inclusion, while CT Page 4139 creating no rights or remedies beyond those the consumer already possesses under state law, "allows those rights and remedies to be asserted against the lender". Id.
So, in this case, where the Act, itself, gives the plaintiffs the right to defend against enforcement of the home improvement contract and the consumer credit contract held by NESCOR because of its failure to comply with the Act by "entering into" the contract via an illegally employed unregistered salesman, the language in the consumer credit contract held by TMS gives them the same right as against TMS.
Accordingly, because the "seller of the goods and services", NESCOR, violated the Act, creating defenses for the plaintiffs to assert against it, the holder of the consumer credit contract, TMS, is subject to those same claims and defenses under the very language of its contract with the plaintiffs. TMS may not enforce the consumer credit contract it holds by foreclosing on the plaintiffs' property for nonpayment.
 IV
The plaintiffs' motion for summary judgment is granted in part. A declaratory judgment that the home improvement contract and both retail installment contracts are invalid and unenforceable shall enter on the first count of the Second Amended Revised Complaint. Judgment shall enter for the plaintiffs-counterclaim defendants on the counterclaims filed by both defendants, NESCOR and TMS.
The motion for summary judgment on count five of the Second Amended Revised Complaint is denied. Although NESCOR's violations of the Act constitute per se unfair and deceptive trade practices under CUTPA, the court cannot determine on this record whether the plaintiffs suffered an "ascertainable loss", an essential element of a claim under CUTPA. Such a determination will have to await a trial on the merits of the plaintiffs' claims of breach of warranty and fraud in NESCOR's performance of the contract. Likewise, the plaintiffs' claims for attorney's fees under General Statutes § 42-150bb must await a disposition of all claims and, assuming the plaintiffs prevail, a submission of affidavits documenting the request.
BY THE COURT
Joseph N. Shortall, J.