KRONBERG BROTHERS, INC. *v.*
JOHN STEELE ET AL.
(AC 21475)

Foti, Dranginis and Freedman, Js.

Argued March 25—officially released September 3, 2002

*Jon D. Biller*, for the appellant (plaintiff).

*Bradley K. Cooney*, for the appellees (defendants).

*Opinion*

DRANGINIS, J. The plaintiff, Kronberg Brothers, Inc., appeals from the judgment of the trial court rendered in favor of the defendants, John Steele and Eileen Steele. On appeal, the plaintiff claims that the court improperly (1) concluded that the contract in this case violated the Home Improvement Act (act), General Statutes § 20-418 et seq., (2) awarded damages under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and (3) rejected its claim that the defendants had acted in bad faith. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. The defendants contacted the plaintiff, a licensed contractor, to perform necessary repairs and renovations to their house after it sustained extensive water damage. On September 29, 1997, a representative of the plaintiff met with the defendants at their home to execute the contract. At that meeting, the terms of the contract were discussed, but the defendants did not sign the contract. The contract, a payment authorization form, a notice of cancellation form and an itemized list of the work to be done, were left with the defendants for their review. On October 1, 1997, the plaintiff faxed a notice of cancellation form and the signature and cover page of the contract to the defendants. The contract was dated October 1, 1997, and indicated a start date of October 6, 1997. The notice of cancellation form also was dated October 1, 1997, but did not reflect the date of the transaction or the date by which the defendants could cancel the contract. On October 6, 1997, Eileen Steele signed the contract, and on October 7, 1997, John Steele signed the contract and the plaintiff began work on the house.

At some point during the performance of the work by the plaintiff and its subcontractors, a dispute arose between the defendants and the plaintiff as to the scope, cost and quality of the work. After the parties failed to resolve the issues, the plaintiff commenced this action to foreclose on the mechanic's lien that it had filed against the defendants' property. The defendants denied the plaintiff's claims and, by special defense, claimed that the contract was in violation of the act and that the plaintiff had breached its obligations in other material respects. The defendants also filed a counterclaim sounding in CUTPA, seeking costs and attorney's fees plus punitive damages.

In its memorandum of decision dated November 8, 2000, the court determined that the plaintiff could not recover on either count of its complaint, and ordered the release and discharge of the lis pendens and mechanic's lien that the plaintiff had filed against the defendants' property. The court also found for the defendants on their counterclaim, and awarded punitive damages in the amount of $13,500 as well as taxable costs and attorney's fees as yet to be determined. This appeal followed. Additional facts will be provided as necessary.

I

First, the plaintiff claims that the court improperly determined that the contract violated the act.[1] Specifically, the plaintiff claims that the contract complied with all of the essential requirements of the statute and any deficiencies merely were technical. We do not agree.

[1] General Statutes § 20-429 provides in relevant part: "(a) No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor.

\* \* \*

"(c) The contractor shall provide and deliver to the owner, without charge, a completed copy of the home improvement contract at the time such contract is executed.

\* \* \*

"(e) Each home improvement contract entered into shall be considered a home solicitation sale pursuant to chapter 740 and shall be subject to the requirements of said chapter regardless of the location of the transaction or of the signing of the contract.

"(f) Nothing in this section shall preclude a contractor who has complied with subdivisions (1), (2), (6), (7) and (8) of subsection (a) of this section from the recovery of payment for work performed based on the reasonable value of services which were requested by the owner, provided the court determines that it would be inequitable to deny such recovery."

We must first set forth our standard of review. "The determination of the requirements of the [Home Improvement Act] is a matter of statutory construction and, therefore, a matter of law over which this court's review is plenary. . . . [T]he process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citations omitted; internal quotation marks omitted.) *Wright Bros. Builders, Inc.* v. *Dowling*, 247 Conn. 218, 226–27, 720 A.2d 235 (1998).

In its memorandum of decision, the court found that the contract in this case violated the act in three specific respects. First, the court found that the contract did not contain proper notice of the homeowners' cancellation rights as required by General Statutes § 20-429 (a) (6). That section incorporates by reference the notice provision of General Statutes § 42-135a (2) of the Home Solicitation Sales Act, General Statutes § 42-134a et seq. The court found that "the required cancellation notice does not appear in immediate proximity to the space reserved in the contract for the signature of the buyer. In fact, the notice in question appears entirely on a separate sheet."

Second, the court found that the plaintiff had failed to enter the date of the transaction on any copy of the "Notice of Cancellation" as required by § 42-135a (3). The court stated: "No cancellation notice produced in evidence satisfies this requirement, so that contract must fail on this score as well."

Last, the court found that a fully completed receipt or copy of all contracts and documents was not pro-

vided to the defendants at the time of the transaction in violation of § 20-429 (c). The court stated: "As related by the *plaintiff*, the contract documents were delivered or faxed piecemeal, some on September 29 [1997] and others on October 1 [1997]. The basic contract was signed by the buyers on October 7 [1997]. A 'payment authorization' was obtained from the buyers before they signed anything. Undated and incomplete cancellation notices were faxed on at least two occasions. The contract must fail also by virtue of this defect." (Emphasis in original.)

In support of its position, the plaintiff claims that *Wright Bros. Builders, Inc.* v. *Dowling*, supra, 247 Conn. 218, is dispositive of its claim that the contract did not violate the act. Although we acknowledge that *Dowling* is instructive on the interpretation of § 20-429, we conclude that it is distinguishable from the facts of the present case.

In *Dowling*, our Supreme Court stated: "The [Home Improvement Act] is a remedial statute that was enacted for the purpose of providing the public with a form of consumer protection against unscrupulous home improvement contractors. . . . The aim of the statute is to promote understanding on the part of consumers with respect to the terms of home improvement contracts and their right to cancel such contracts so as to allow them to make informed decisions when purchasing home improvement services. . . . While the purposes of the statute are advanced by an interpretation that makes compliance with the requirements of § 20-429 (a) mandatory, it does not necessarily follow that advancement of the purposes also requires that the mandatory compliance with each subsection be technically perfect. . . . In light of our prior interpretations of § 20-429 (a) and the legislative history of that subsection, we conclude that a construction that would require technically perfect compliance with each subdivision is

inappropriate. Rather, an interpretation of that section that acknowledges and furthers the remedial purposes of the statute is in order." (Citations omitted.) Id., 231.

The cancellation notice in *Dowling* failed to contain the date of the transaction and the date by which the defendants could cancel the contract. Our Supreme Court determined that "the plaintiff's failure to enter the required dates on the notice of cancellation did not, under the circumstances, constitute such a deviation from the precise specifications of the [act] as to compel the conclusion that the contract failed to comply with the [act]." Id., 233. The court further explained that "[t]he missing information, however, easily could have been gleaned from even the most cursory review of the contract" because in immediate proximity to the space reserved in the contract for the homeowner's signature was language providing cancellation notice. Id. The court also determined that the transaction date was on the first page of the contract and from that information, the buyer could have easily determined what the cancellation period was.

In this case, however, not only did the cancellation notice fail to contain the date of the transaction and the date by which the defendants could cancel the contract, the contract itself lacked a transaction date. Furthermore, the contract did not contain the required cancellation notice in immediate proximity to the space reserved in the contract for the signature of the buyer. Near the top of the second page of the contract, there was language that notified the defendants of their right to cancel the contract, but the language failed to comply with § 42-135a in both verbiage and location. The contract indicated a start date of October 6, 1997, but the contract was not signed by John Steele until October 7, 1997.

We conclude that the plaintiff's failure to comply with the act in this case amounted to more than a mere

technicality; it constitutes material noncompliance with the act's requirements. As we previously stated, the primary purpose of the statute is "to promote understanding by the consumer, to ensure his ability to make an informed decision and to protect him from . . . an unscrupulous contractor." (Internal quotation marks omitted.) *Northrop* v. *Allstate Ins. Co.*, 247 Conn. 242, 253, 720 A.2d 879 (1998). The requirement that a consumer is fully notified and understands his or her right to cancel a contract is central to the act. In this case, without a transaction date on the contract and cancellation form, the defendants were left to determine for themselves when the cancellation period began and ended. The end result was a transaction rife with confusion, one of the very situations that the act seeks to avoid. Accordingly, under the circumstances of this case, we conclude that the court properly determined that the contract violated the requirements of the act.

II

The plaintiff next claims that the court improperly awarded damages under CUTPA.[2] We are not persuaded.

"A party seeking to recover damages under CUTPA must meet two threshold requirements. First, he must establish that the conduct at issue constitutes an unfair or deceptive trade practice. . . . Second, he must present evidence providing the court with a basis for a

---

[2] In its reply brief, the plaintiff raises for the first time the issues of the award of punitive damages and attorney's fees, and the application of the "cigarette rule" under CUTPA. "It is a well established principle that arguments cannot be raised for the first time in a reply brief. . . . Claims of error by an appellant must be raised in his original brief . . . so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument." (Citations omitted; internal quotation marks omitted.) *Kelley* v. *Tomas*, 66 Conn. App. 146, 163–64, 783 A.2d 1226 (2001). Accordingly, we decline to address those arguments.

reasonable estimate of the damages suffered." (Internal quotation marks omitted.) *Jacques All Trades Corp.* v. *Brown*, 42 Conn. App. 124, 130, 679 A.2d 27 (1996), aff'd, 240 Conn. 654, 692 A.2d 809 (1997). Under the first requirement, the failure to comply with the act "is a per se violation of CUTPA by virtue of . . . [General Statutes] § 20-427 [c], which provides that any violation of the Home Improvement Act is deemed to be an unfair or deceptive trade practice." (Internal quotation marks omitted.) *Meadows* v. *Higgins*, 49 Conn. App. 286, 296, 714 A.2d 51 (1998), rev'd on other grounds, 249 Conn. 155, 733 A.2d 172 (1999). "The second requirement for a valid CUTPA claim does not necessitate that the actual amount of ascertainable loss be proven." *Reader* v. *Cassarino*, 51 Conn. App. 292, 299, 721 A.2d 911 (1998). "Whether a practice is unfair and thus violates CUTPA is an issue of fact. . . . On appellate review, we overturn factual determinations only when they are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Calandro* v. *Allstate Ins. Co.*, 63 Conn. App. 602, 615, 778 A.2d 212 (2001).

In its memorandum of decision, the court found that there was a per se violation of CUTPA because the contract violated the act. In addition, the court cited other bases for its finding that the plaintiff had violated CUTPA. For example, the court found that the plaintiff had failed to obtain building and electrical permits for the work it performed even though the cost of the permits was billed to the defendants. In addition, live wires were sealed behind closed walls in at least three locations. The court found that "[t]he sum total of all of the above dictates the conclusion that the plaintiff in various and numerous instances was guilty of business practices which the CUTPA seeks to discourage and punish," and the defendants "lost time from work and had to spend over $6000 for corrective work, as well as the disruption of their lives . . . ."

The record amply supports the court's finding of a CUTPA violation. Accordingly, we conclude that the court's findings are not clearly erroneous.

## III

Finally, the plaintiff claims that the court improperly applied the law with respect to the claim of bad faith and failed to apply properly the evidence that was offered at trial. Specifically, the plaintiff asserts that the court improperly rejected its claim of bad faith by the defendants on the basis of its finding that none of the acts alleged was committed prior to the execution of the contract. We do not agree.

"In *Barrett Builders* v. *Miller*, [215 Conn. 316, 576 A.2d 455 (1990), our Supreme Court] stated in dictum that, in the absence of bad faith, a homeowner is privileged to repudiate a home improvement contract that violates the act. In *Habetz* v. *Condon*, 224 Conn. 231, 618 A.2d 501 (1992) . . . [the court] more fully addressed the bad faith exception and held that proof of a homeowner's bad faith will preclude that homeowner from repudiating with impunity a home improvement contract that violates the act. [Our Supreme Court] defined bad faith as involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . In other words, [b]ad faith means more than mere negligence; it involves a dishonest purpose." (Citations omitted; internal quotation marks omitted.) *Wadia Enterprises, Inc.* v. *Hirschfeld*, 224 Conn. 240, 247–48, 618 A.2d 506 (1992). "The central element giving rise to this exception is the recognition that to allow the homeowner who acted in bad faith to repudiate the contract and hide behind the act would be to allow him to benefit from his own wrong, and indeed encourage him to act thusly. Proof of bad faith

therefore serves to preclude the homeowner from hiding behind the protection of the act." *Habetz* v. *Condon*, supra, 237. "It is the burden of the party asserting the lack of good faith to establish its existence and whether that burden has been satisfied in a particular case is a question of fact." Id., 237 n.11.

In its memorandum of decision, the court stated: "[N]one of the acts alleged was committed prior to the execution of the disputed contract. There is no evidence that the defendants did anything to create the defects in the cancellation notice. . . . The balance of the acts complained of arose out of the deteriorating relationship between the parties and can hardly be held to be actions in bad faith when the defendants were confronted with what must have been an exasperating ordeal. The plaintiff overlooks the evidence in this trial, which hardly depicts a neat, orderly and efficient project proceeding on time and without delay. The bad faith claim must be rejected."

Although the court specifically mentioned the time period before the execution of the contract, it is clear that the court did not rely solely on those acts as a basis for its decision. The court clearly considered the defendants' acts before and after the execution of the contract when it rejected the plaintiff's bad faith claim.[3] Accordingly, we conclude that the court properly concluded that the plaintiff failed to establish the existence of bad faith on the part of the defendants.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] We note that the plaintiff filed a motion for articulation with the trial court and a motion for review of the denial of that motion with this court. This court granted the motion for review, but denied the relief requested therein. In both motions, the plaintiff sought to have the trial court further articulate "the conduct of the defendants which occurred prior to the execution of the original contract documentation . . . ." Now, on appeal, the plaintiff claims that the court improperly relied on the defendants' actions prior to the execution of the contract.