NEW ENGLAND CUSTOM CONCRETE, LLC *v.* MARIA CARBONE ET AL.
(AC 27706)

Bishop, Lavine and Peters, Js.

Argued April 19—officially released July 24, 2007

*William B. Wynne*, with whom, on the brief, was *Frank B. Velardi, Jr.*, for the appellants (defendants).

*Noah J. Schafler*, for the appellee (plaintiff).

*Opinion*

PETERS, J. The Home Improvement Act, General Statutes § 20-418, "is a remedial statute that was enacted for the purpose of providing the public with a form of consumer protection against unscrupulous home improvement contractors. . . . The aim of the statute is to promote understanding on the part of consumers with respect to the terms of home improvement contracts and their right to cancel such contracts so as to allow them to make informed decisions when purchasing home improvement services." (Citation omitted.) *Wright Bros. Builders, Inc.* v. *Dowling*, 247 Conn. 218, 231, 720 A.2d 235 (1998). The principal issue in this case is whether, in the absence of a finding of bad faith by the homeowner, a trial court may enforce a home improvement contract that does not contain a cancellation clause in substantial compliance with the requirements of General Statutes § 20-429,[1] the statute.

---

[1] General Statutes § 20-429 provides in relevant part: "(a) No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor and the contractor's registration number, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. Each change in the terms and conditions of a contract shall be in writing and shall be signed by the owner and contractor, except that the commissioner may, by regulation, dispense with the necessity for complying with the requirement that each change in a home improvement contract shall be in writing and signed by the owner and contractor. . .

"(e) Each home improvement contract entered into shall be considered a home solicitation sale pursuant to chapter 740 and shall be subject to the

Because we disagree with the court's resolution of this dispositive issue, we reverse the court's judgment in favor of the contractor.

In a three count substituted complaint filed December 22, 2004, the plaintiff, New England Custom Concrete, LLC, sought to recover monetary damages and attorney's fees from the defendants, Maria Carbone and Bing Carbone, because of their failure to make a final payment of $3049 for concrete walkways installed at their residence in Shelton.[2] The defendants denied their liability and, in addition, filed special defenses alleging that the plaintiff had failed to comply with § 20-429 and a counterclaim seeking compensatory damages for common law malfeasance and attorney's fees pursuant to General Statutes § 42-150bb[3] and statutory damages and attorney's fees for violation of the Home Improvement Act. General Statutes § 20-427 (c)[4] provides that a violation of the Home Improvement Act constitutes a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. See General Statutes § 42-110g.[5]

requirements of said chapter regardless of the location of the transaction or of the signing of the contract. . . . "

[2] The three count complaint alleged that the plaintiff was entitled to damages for breach of contract, in quantum meruit and for unjust enrichment. The plaintiff sought recovery of $3049 as well as interest and attorney's fees. In the second count, sounding in quantum meruit, the amount outstanding was listed as $3649. That figure appears to be a typographical error, as the court and the parties used the figure of $3049 in all other references.

[3] General Statutes § 42-150bb provides in relevant part: "Whenever any contract or lease entered into on or after October 1, 1979, to which a consumer is a party, provides for the attorney's fee of the commercial party to be paid by the consumer, an attorney's fee shall be awarded as a matter of law to the consumer who successfully prosecutes or defends an action or a counterclaim based upon the contract or lease. . . ."

[4] General Statutes § 20-427 (c) provides in relevant part: "A violation of any of the provisions of this chapter shall be deemed an unfair or deceptive trade practice under subsection (a) of section 42-110b."

[5] General Statutes § 42-110g provides in relevant part: "(a) Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited

After a court trial, the court found in favor of the plaintiff on these issues and rendered a judgment in its favor for $3049 and for attorney's fees. As a matter of fact, the court found that the plaintiff had performed its contract obligations "in a reasonably workmanlike fashion and in accordance with the conditions specified in the contract." As a matter of law, the court ruled for the plaintiff both on the defendants' special defenses and on their counterclaim. With respect to the special defenses, the court summarily concluded that the parties' contract complied with § 20-429. With respect to the counterclaim, the court held that the defendants were barred from pursuit of a claim for damages because "[t]he defendant[s] cannot both claim a breach of contract and at the same time claim an invalid contract by way of defense." The defendants have appealed.[6]

The trial court's memorandum of decision and the record contain the relevant facts, which are undisputed. On May 5, 2004, the plaintiff and the defendants entered into a written contract for the installation of a concrete walkway in the front of the defendants' house at a cost of $2765. Thereafter, the parties orally agreed to have

---

by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. Proof of public interest or public injury shall not be required in any action brought under this section. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper.

\* \* \*

"(d) In any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, cost and reasonable attorney's fees based on the work reasonably performed by an attorney and not on the amount of recovery. . . ."

[6] The trial court's judgment included an order for the payment of attorney's fees to the plaintiff, in an amount to be determined at a later date. Although attorney's fees have not yet been assessed, we have subject matter jurisdiction to hear the defendants' appeal because the court's judgment on the merits is a final judgment. See *Paranteau* v. *DeVita*, 208 Conn. 515, 523, 544 A.2d 634 (1988).

the plaintiff also construct a walkway at the pool deck in the rear of the residence and, in consequence, agreed to an increase in the contract price to $22,464. The defendants made an initial payment of $915 as specified by the original contract and, after completion of all the work on June 22, 2004, made additional payments totaling $18,500. The defendants declined, however, to make the final payment of $3049, because, in their view, the work performed by the plaintiff was defective. The court resolved this factual dispute about the plaintiff's workmanship in favor of the plaintiff, and the defendants have not challenged the validity of this finding on appeal.

Although the trial court recognized that the defendants had raised a special defense as matter of law under § 20-429, it did not undertake a close analysis of the written contract, which was an exhibit at trial. In a conclusory statement, it simply held that the contract satisfied the requirements of the statute.

Examination of the contract discloses a two page home improvement contract on a standardized form imprinted with the plaintiff's letterhead. The negotiated parts of the contract describe the work to be done as a front walkway at the defendants' residence, with the requisite specifications for this work, a statement of the contract price and a payment schedule. To reflect the parties' subsequent decision to expand the work to include the pavement of a walkway at the pool deck, the agreement contains a series of cryptic numerical calculations with a dollar amount. One of the defendants signed the contract initially but neither of them agreed in writing to the revision of the contract price for the added work at the pool. The plaintiff never signed the contract.[7]

---

[7] In addition to its negotiated terms, the contract also contains a clause in small print that states: "All agreements contingent upon strikes, accidents, weather or delay beyond our control. All work shall include labor, material, equipment and transportation to complete the installation of the job. How-

The defendants' appeal challenges the trial court's interpretation of § 20-429 as it applied to this contract. The defendants maintain that the trial court improperly concluded that (1) the contract between the parties complied with § 20-429 and (2) the defendants' statutory claim under § 20-429 was, in effect, an election of remedies that precluded their pursuit of their statutory counterclaim under CUTPA, § 42-110g, made applicable to violations of the Home Improvement Act by § 20-427 (c). Both of the issues raised by the defendants concern issues of statutory interpretation and our review of their merits, therefore, is plenary. *Crandall* v. *Gould*, 244 Conn. 583, 590, 711 A.2d 682 (1998). Because we agree with the defendants' interpretation of the applicable statutes, we reverse the judgment of the court.

I

THE HOME IMPROVEMENT ACT

The Home Improvement Act was enacted in 1979; see Public Acts 1979, No. 79-606; "not only to protect homeowners from substandard work but also to ensure that homeowners are able to make an informed choice on a decision that has potentially significant financial consequences." *Barrett Builders* v. *Miller*, 215 Conn. 316, 327, 576 A.2d 455 (1990). Accordingly, § 20-429 (a)

ever, there will be a charge per load for removal of excavated material. The color guide shown representative and approximate, as closely as possible, and cannot guarantee the final appearance to be an exact match. The use of sealer and slight color-drifts in raw material will produce variation of the color. [The plaintiff] highly recommends concrete be sealed every three to five years to maintain its natural beauty. Warranty covered heaving of concrete not the concrete itself or hair line cracking because [the plaintiff] is not the maker of the concrete so therefore is not responsible. [The plaintiff] is not responsible for lawn or driveway damage caused by use or necessary equipment to complete job (ex. concrete truck, work trucks, or machinery). There will be no deposit refunds after three days of acceptance of contract. Failure of payment will result in attorney action, attorney costs, and or lien action will be taken into effect immediately following termination of contract."

(6) expressly invalidates and declares unenforceable a home improvement contract that does not give a homeowner written "notice of the owner's cancellation rights in accordance with the provisions of [the Home Solicitation Sales Act, General Statutes § 42-134 et seq.] . . . ." General Statutes § 20-429 (a) (6). *Barrett Builders* held that, in the absence of a showing of bad faith on the part of the homeowner, a contractor who does not comply substantially with § 20-429 (a) is barred from any monetary recovery, contractual or restitutionary. *Barrett Builders* v. *Miller*, supra, 324–25.

In 1993, the legislature revisited § 20-429 by adding subsection (f). See Public Acts 1993, No. 93-215, § 1 (P.A. 93-215). Recognizing that strict enforcement of the Home Improvement Act sometimes leads to harsh results, the new subsection affords access to equitable relief for home improvement contractors who meet some, but not all of the requirements stated in the remainder of the statute. See P.A. 93-215; see also *Economos* v. *Liljedahl Bros., Inc.*, 279 Conn. 300, 310, 901 A.2d 1198 (2006) ("[s]ubsection [f] of § 20-429 allows quantum meruit recovery in certain cases of noncompliance with subsection [a]"). Subsection (f) provides: "Nothing in this section shall preclude a contractor *who has complied with subdivisions (1), (2), (6), (7) and (8)* of subsection (a) of this section from the recovery of payment for work performed based on the reasonable value of services which were requested by the owner, provided the court determines that it would be inequitable to deny such recovery." (Emphasis added.) General Statutes § 20-429 (f). Significantly, even as amended, § 20-429 does not provide restitutionary relief for a contractor who, like the present plaintiff, seeks enforcement of a home improvement contract that does not contain a starting date, a completion date and a proper notice of cancellation. The legislature's express failure

to give the trial court carte blanche to excuse noncompliance with § 20-429 in its entirety manifests its acquiescence in our strict construction of the statute in these other respects.[8] See *Hammond* v. *Commissioner of Correction*, 259 Conn. 855, 874, 792 A.2d 774 (2002); *Kondrat* v. *Brookfield*, 97 Conn. App. 31, 42, 902 A.2d 718, cert. denied, 280 Conn. 926, 908 A.2d 1087 (2006).

The plaintiff does not dispute the defendants' claim that the contract between the parties does not comply fully with the requirements of § 20-429. It argues instead that the defendants are precluded from invoking the protection afforded them by the act because (1) the defendants repudiated their contract obligations in bad faith and (2) the agreement between the parties was substantially in compliance with § 20-429. Under the circumstances of this case, we disagree with the plaintiff.

A

The principles governing the plaintiff's claim of bad faith are well established. In *Barrett Builders* v. *Miller*, supra, 215 Conn. 328, our Supreme Court stated, in dictum, that a homeowner could not avail himself of the protection afforded to him by § 20-429 if he invoked the statute in bad faith. Our Supreme Court subsequently applied the bad faith exception in *Habetz* v.

---

[8] Indeed, the legislative history is unequivocal in this regard. In response to motions made by Representative William J. Varese and approved unanimously by the House, the statute was amended on the floor to make it clear that a contractor would not be able to recover under quantum meruit if the home improvement contract did not comply with subdivisions (6) and (7) of § 20-429 (a). 36 H.R. Proc., Pt. 16, 1993 Sess., pp. 5604–5605.

While introducing the original bill, prior to Representative Varese's amendment, Representative Thomas A. Fox, chairman of the general laws committee, indicated that the bill would "modif[y] the existing law to allow a contractor to recover on a theory of quantum meruit for what is reasonable and fair based upon the work that was done, if in fact, *certain* requirements but not all that are required, are met." (Emphasis added.) Id., p. 5603.

*Condon*, 224 Conn. 231, 618 A.2d 501 (1992), in which it upheld a trial court's factual finding of bad faith. "The central element giving rise to this exception is the recognition that to allow the homeowner who acted in bad faith to repudiate the contract and hide behind the act would be to allow him to benefit from his own wrong, and indeed encourage him to act thusly. Proof of bad faith therefore serves to preclude the homeowner from hiding behind the protection of the act." Id., 237. *Habetz* made it clear, however, that mere disagreement about contract performance does not suffice to establish bad faith. *Habetz* defined bad faith as involving "actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." (Citation omitted; internal quotation marks omitted.) Id.

"It is the burden of the party asserting the lack of good faith to establish its existence and whether that burden has been satisfied in a particular case is a question of fact." (Internal quotation marks omitted.) *Kronberg Bros., Inc.* v. *Steele*, 72 Conn. App. 53, 63, 804 A.2d 239, cert. denied, 262 Conn. 912, 810 A.2d 277 (2002). In this case, the trial court made no finding of fact with respect to the plaintiff's present claim of bad faith. The defendants dispute the plaintiff's claim that their disagreement with the plaintiff can properly be so characterized. At best, the record demonstrates vigorous disagreement about the quality of the plaintiff's workmanship in performing the contract. It is, therefore, doubtful that the court *could* have made a finding of bad faith. It is, however, clear that this court *cannot* make such a finding because appellate courts in this state do not make findings of fact. *State* v. *Pagan*, 75

Conn. App. 423, 431, 816 A.2d 635, cert. denied, 265 Conn. 901, 829 A.2d 420 (2003). On this record, the plaintiff has failed to establish the necessary predicate for invoking the bad faith exception to enforcement of the Home Improvement Act.

B

Alternatively, the plaintiff maintains that the court properly rendered a judgment in its behalf because, as a matter of law, its contract was in substantial compliance with the requirements of the Home Improvement Act. It invokes the instruction of our Supreme Court in *Wright Bros. Builders, Inc.* v. *Dowling*, supra, 247 Conn. 229, that § 20-429 should not be applied "so as to require perfect, ritualistic compliance as a condition precedent to recovery by a contractor." We are not persuaded that *Wright Bros. Builders, Inc.*, controls this case.[9]

In *Wright Bros. Builders, Inc.*, our Supreme Court held that a home improvement contractor could enforce a contract that failed to comply with the statute in ways that the court characterized as "minor" and "highly technical . . . ." Id., 232. The court described the defects as follows: "(1) [the contract] did not have the cancellation notice in duplicate so that there would be a tear-off sheet to return if the homeowner decided to cancel the contract and (2) the cancellation notice failed to contain the date of the transaction and the date by which the defendants could cancel the contract on the notice of cancellation." Id. The court noted that the missing information "easily could have been gleaned from even the most cursory review of the contract." Id., 233. In no other respect did the contract in that case fail to comply with § 20-429.

---

[9] The court, having found that the contract complied with § 20-429, had no occasion to address this issue.

The defects in the contract on which the plaintiff relies in this case are of a different order of magnitude. The contract does not contain (1) the plaintiff's signature; see General Statutes § 20-429 (a) (2);[10] (2) the terms of the modified agreement for paving at the pool deck,[11] (3) a starting and a completion date; see General Statutes § 20-429 (a) (7);[12] or (4) a notice of cancellation in accordance with the provision of the Home Solicitation Sales Act. See General Statutes § 20-429 (a) (6).[13] In our view, these departures from the requirements of § 20-429 cannot properly be described as either "minor" or "highly technical."

In light of this record, it is understandable that, although the plaintiff cites *Wright Bros. Builders, Inc.*, in principle, it does not argue that the case is directly controlling. Instead, the plaintiff argues that it substantially complied with § 20-429 because, as the court found, it had performed its contract obligations "in a reasonably workmanlike fashion and in accordance with the conditions specified in the contract." For this proposition, the plaintiff relies on this court's holding in *Avon Plumbing & Heating Co.* v. *Fey*, 40 Conn. App. 351, 358, 670 A.2d 1318 (1996), that "[t]he purpose of the Home Improvement Act is to ensure that home improvements are performed by qualified people."

The plaintiff's reliance on *Avon Plumbing & Heating Co.* v. *Fey*, supra, 40 Conn. App. 358, is misplaced. That case involved the applicability of General Statutes § 20-428 (4), which provides an exemption from the writing requirements of the Home Improvement Act for services performed by "any person holding a current professional or occupational license . . . ." (Internal quotation marks omitted.) Id., 353 n.3. The question

[10] See footnote 1.
[11] See *Caulkins* v. *Perillo*, 200 Conn. 713, 717, 513 A.2d 43 (1986).
[12] See footnote 1.
[13] See footnote 1.

for the court was whether an exemption that permits licensed plumbers to enforce oral home improvement contracts also permits such an action by a *corporation* that employs licensed plumbers. Id., 353.

This court's interpretation of the statutory exemption as including a corporate employer provides no authority for exempting the plaintiff in this case from the writing requirements of § 20-429. If every registered home improvement contractor were deemed to be a person holding a "professional or occupational license," this limited exception would swallow the rule. The plaintiff's proposed construction of § 20-428 (4) would not only be inconsistent with the principles generally governing remedial statutes; see *Fojtik* v. *Hunter*, 265 Conn. 385, 392–93, 828 A.2d 589 (2003); but would also be irreconcilable with § 20-429 (f), which unambiguously provides that failure to comply with subdivisions (6) and (7) of § 20-429 (a) makes a home improvement contract unenforceable.

We have, moreover, decided a case that squarely addresses and refutes the plaintiff's argument of substantial compliance with § 20-429. In *Kronberg Bros., Inc.* v. *Steele*, supra, 72 Conn. App. 56, as in this case, a home improvement contractor maintained that its contract substantially complied with all the essential requirements of § 20-429 and that "any deficiencies were merely technical." We disagreed with that characterization because "the cancellation notice fail[ed] to contain the date of the transaction and the date by which the defendants could cancel the contract, the contract itself lacked a transaction date [and] the contract did not contain the required cancellation notice in immediate proximity to the space reserved in the contract for the signature of the buyer." Id., 59. By way of comparison, the *only* provision in this plaintiff's contract that in any way addresses the defendants' right

to cancel is a single sentence, located in a printed paragraph containing contract provisions limiting the plaintiff's liability, that states: "There will be no deposit refunds after three days of acceptance of contract."[14] That language is even less compliant with the requirements of the act than the contract language in *Kronberg Bros., Inc.* The holding in *Kronberg Bros., Inc.*, that the home improvement contract in that case was in material noncompliance with the requirements of § 20-429 requires us to reach the same conclusion here.

In sum, we conclude that the court improperly decided that the plaintiff was entitled to recover the unpaid final installment of its home improvement contract with the defendants. The plaintiff has not established that the defendants invoked the protection afforded to them by § 20-429 in bad faith. Furthermore, the plaintiff has failed to demonstrate that the provisions of its contract were in substantial compliance with the requirements of the act. The defendants are entitled to judgment in their behalf on the plaintiff's complaint.

## II

### THE CUTPA COUNTERCLAIM

In the third count of their counterclaim at trial,[15] the defendants alleged that they were entitled to an award of monetary damages because the plaintiff's failure to comply with § 20-429 was an unfair or deceptive act or practice in the conduct of trade or business in violation of General Statutes § 42-110b. As a remedy, they sought compensatory damages, punitive damages and attorney's fees pursuant to General Statutes § 42-110g.

---

[14] See footnote 7.

[15] In this appeal, the defendants have not pursued the first or second counts of the counterclaim that they filed at trial.

The trial court held that the defendants were barred from pursuit of this counterclaim because "[t]he defendant[s] cannot both claim a breach of contract and at the same time claim an invalid contract by way of defense." We agree with the defendants that, under the circumstances of this case, the court's ruling was improper and its judgment must be set aside. Pursuant to General Statutes § 20-427 (c),[16] a violation of the Home Improvement Act is automatically a violation of CUTPA. See also *A. Secondino & Son, Inc.* v. *LoRicco*, 215 Conn. 336, 343, 576 A.2d 464 (1990). It follows that the defendants' claim that the plaintiff's contract did not substantially comply with § 20-429 (a) was entirely consistent with their claimed right to recover damages and attorney's fees under § 42-110g.

It does not follow, however, that the defendants are now entitled to the entry of a monetary judgment in their behalf. Even though § 42-110g (a) authorizes the award of compensatory and punitive damages for a CUTPA violation, the statute is not self-executing. Litigants who seek to recover damages under CUTPA must meet two threshold requirements. First, they must establish that the conduct at issue constitutes an unfair or deceptive trade practice. Second, they must present evidence providing a basis for a court to make a reasonable estimate of the damages that they have suffered. See *Reader* v. *Cassarino*, 51 Conn. App. 292, 299, 721 A.2d 911 (1998). There is no automatic entitlement to damages.

In this case, the record establishes no basis for the award of either compensatory or punitive damages. The defendants have not explained how they could be found to have suffered compensatory damages when they have not challenged the validity of the court's finding that the plaintiff performed its contract obligations in

---

[16] See footnote 4.

workmanlike fashion. The defendants have not alleged, in their pleadings, that the plaintiff engaged in the kind of egregious misconduct that would justify punitive damages. As our Supreme Court has only recently reminded us, "[p]unitive damages may be awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others." (Internal quotation marks omitted.) *Lydall* v. *Ruschmeyer*, 282 Conn. 209, 245, 919 A.2d 421 (2007). A contractor's failure to comply with § 20-429 does not warrant such opprobrium.

The defendants' entitlement to recover attorney's fees stands on a different footing. Section § 42-110g (d) provides in relevant part that "[i]n any action brought by a person [pursuant to CUTPA], the court may award . . . costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. . . ." Because an award of attorney's fees under this statute is not a matter of right, we have held that "[w]hether any award is to be made and the amount thereof lie within the discretion of the trial court, which is in the best position to evaluate the particular circumstances of a case." (Internal quotation marks omitted.) *LaMontagne* v. *Musano, Inc.*, 61 Conn. App. 60, 63–64, 762 A.2d 508 (2000). The defendants are entitled to an opportunity to make their case for attorney's fees, but this court is not the proper forum for that presentation. We conclude, therefore, that a remand is required to permit them to prove their attorney's fees.

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.