ROBERT CAMPAGNONE ET AL. *v.* DANIEL W. CLARK
(AC 29440)

Bishop, Lavine and Borden, Js.

Argued April 20—officially released August 25, 2009

*I. David Marder*, with whom was *Joel A. DeFelice*, for the appellants (plaintiffs).

*Derek V. Oatis*, for the appellee (defendant).

BORDEN, J. The plaintiff homeowners, Robert Campagnone and Robin Campagnone, appeal from the judgment, rendered after a trial to the court, finding the defendant, Daniel W. Clark, liable for breach of a home improvement contract but awarding them only nominal damages. The plaintiffs claim that the court improperly (1) found that their proposed remediation estimate for exterior construction work was unnecessarily costly, (2) neglected to award damages on the basis of the defendant's failure to build certain bifold doors and (3) reduced the final damages award by their unpaid contract balance. We affirm the judgment of the trial court.

The plaintiffs brought their action in four counts. In the first count, the plaintiffs claimed that the defendant breached a written home improvement contract by failing to properly build specified custom kitchen cabinetry and bifold doors. The second count alleged breach of an oral contract as a result of the improper installation of the kitchen cabinets.[1] In the third count, the plaintiffs claimed that the defendant breached a separate oral contract as to some exterior construction work. The fourth count sought damages for alleged violations of the Home Improvement Act (act); General Statutes § 20-418 et seq.; and consequently the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., on the basis of the defendant's failure to register as a home improvement contractor.

The court found in favor of the plaintiffs on the breach of contract claim alleged in count one[2] but denied relief

---

[1] Originally, the second count included several additional allegations of interior home improvement work that was not completed by the defendant. These claims were subsequently withdrawn by the plaintiffs, leaving only the improper cabinet installation claim at trial.

[2] The court included any possible damages for the improper installation work alleged in count two in the award for the claim stated in count one.

for both the exterior defects complained of in count three and the CUTPA violations alleged in count four. The court subsequently offset the plaintiffs' total damages by the unpaid balance remaining on the contract and accordingly awarded only nominal damages. This appeal followed.

The court's memorandum of decision and articulation and the underlying record reveal the following undisputed facts. The defendant, doing business as Old House Woodcraft, is engaged in the trade of custom cabinetry making. During all times relevant to this dispute, the defendant was not registered as a home improvement contractor as required by General Statutes § 20-420.[3]

In August, 2003, the plaintiffs and the defendant entered into a written contract for the fabrication and construction of custom kitchen cabinetry in accordance with certain design sketches. Included in that kitchen cabinetry contract were plans for the building of bifold doors designed to conceal a wall oven. The contract price for that kitchen work was $17,951.50. The plaintiffs later entered into a separate oral contract with the defendant for the installation of the custom cabinets and additional interior work. They agreed to a flat rate of $15,000 for the interior work and to an hourly rate for the cabinet installation work.

Subsequently, in October, 2003, the plaintiffs and the defendant entered into an additional oral contract for various exterior home improvements to the plaintiffs' deck, porch and lattice panels. The agreement included the fabrication and installation of porch railings and posts. The exterior work was to be billed on a time and materials rate. The defendant's total bill for the exterior work was $6810.74.

---

[3] General Statutes § 20-420 (a) provides in relevant part: "No person shall hold himself or herself out to be a contractor . . . without first obtaining a certificate of registration" from the commissioner of consumer protection.

Over the course of the home construction project, the relationship between the parties deteriorated, and the plaintiffs eventually requested that the defendant not return to the construction premises. The plaintiffs thereafter brought this action seeking damages arising from the defendant's allegedly defective construction work. The plaintiffs, however, unilaterally withheld more than $8000 from their payment of invoices submitted to them in connection with the construction project. The plaintiffs claimed that they withheld that money to remediate the kitchen cabinetry and porch defects of which they complained.

Following a trial to the court, the court found that the custom kitchen cabinets fabricated by the defendant were defective. The court noted that there were "noticeable and uneven gaps between some cabinet doors and frames." Additionally, "some paneling in the kitchen island . . . needed some minor corrective work, and [the] cabinet doors over the refrigerator did not 'sit flush' . . . ." Furthermore, the court found that "the defendant admittedly failed to construct [the] bifold doors . . . ." The court concluded that remediation expenses of $6336.95 for these defects were reasonable.

In contrast, the court refused to award remediation damages for the allegedly defective exterior work performed by the defendant. The plaintiffs claimed exterior defects in the form of "excessive spacing on some porch flooring, lattice not per spec, balusters not evenly spaced, [and] newel posts and post caps [separation]." The plaintiffs' expert, Scott Newton, submitted a remediation estimate in connection with these alleged defects in the amount of $4904.16.[4] The court, however,

---

[4] In its memorandum of decision, the court initially calculated the Newton estimate to be $9246.52, rather than $4904.16. This is attributable to the plaintiffs' providing the court with two estimates prepared by Newton for the same exterior work. This inaccuracy is discussed further in part I of this opinion.

found Newton's remediation proposal to be "unnecessarily costly," reasoning that some of the alleged defects were repairable by applying caulking, while other proposed modifications were either approved by the plaintiffs or specifically not called for in the project blueprints.[5]

The court also denied any CUTPA relief. The plaintiffs claimed that the defendant's failure to register as a home improvement contractor violated the act and consequently was a per se CUTPA violation.[6] Although, as the court found, "[t]he defendant admittedly was not registered as a home improvement contractor," the court nevertheless also found that the plaintiffs did not suffer an ascertainable loss as a result of the defendant's registration inadequacies. Accordingly, the court found in favor of the defendant on the CUTPA claim.

Finally, the court turned to the issue of the plaintiffs' damages. The court repeated its finding that the plaintiffs were entitled to $6336.95 to remediate the defective kitchen cabinetry. The court found, however, that this award was necessarily offset by the plaintiffs' unilateral withholding of $8000 from the final contract balance. Finding that the plaintiffs' cost to remediate was less than the amount withheld, the court rendered judgment in favor of the plaintiffs on the breach of contract claim for nominal damages in the amount of $1.

I

The plaintiffs first claim that the court improperly (1) found Newton's remediation proposal for exterior

---

[5] More specifically, the court found: "[The defendant] credibly testified that separations in the newel posts and caps . . . were repairable by applying caulking. . . . The balusters can't be expected to all be equally spaced, especially near a newel post. Nor does the blueprint call for such [spacing]. . . . With respect to the use of pine instead of cedar for the lattice . . . [t]he defendant made that recommendation to the plaintiffs, who approved the use of pine."

[6] A violation of the act "shall be deemed an unfair or deceptive trade practice under subsection (a) of section 42-110b." General Statutes § 20-427 (c).

work to be unnecessarily costly and (2) declined to award them $750 in damages for the defendant's failure to construct the bifold doors. We disagree with both of these claims.

The court's finding that the exterior remediation proposal was unnecessarily costly, along with its assessment of the bifold door damages, are findings of fact subject to the clearly erroneous standard of review. "The law governing [our] limited appellate review is clear. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Stevenson Lumber Co.-Suffield, Inc.* v. *Chase Associates, Inc.*, 284 Conn. 205, 216–17, 932 A.2d 401 (2007).

With respect to their first challenge, the plaintiffs refer to the fact that the court mistakenly added two damage estimates when referencing Newton's remediation proposal in its memorandum of decision. See footnote 4. They maintain that this error evidences a flaw in the court's original conclusion that the proposed remedy was unnecessarily costly.

In its articulation, the court specifically addressed its miscalculation of Newton's damage estimate.[7] The

---

[7] We note the following relevant portion of the court's articulation: "The [c]ourt apparently erred in finding the estimate to repair claimed defects in the newel posts and caps on the deck was $9246.52. The correct claim, it appears, should have been $4904.16. . . . [T]he evidence established [that] the newel posts and caps were installed properly. Any subsequent

court found, however, that even in light of this mistake, the exterior repairs proposed by Newton were not reasonably necessary. Upon our thorough review of the record, including the reasonable inferences that the trial court could have drawn therefrom, we conclude that there is ample evidence to support the court's determination that Newton's proposal was unnecessarily costly.[8] We cannot say that this finding was clearly erroneous. Accordingly, this claim fails.

The court's alleged failure specifically to award the plaintiffs $750 in damages for the bifold doors also was not clearly erroneous. There is no dispute that the defendant did not build the bifold doors; however, it is also undisputed that the plaintiffs withheld more than $8000 from invoices submitted to them by the defendant. The court responded to inquiries concerning the bifold doors in its articulation and stated that "[a]ny costs to remediate defective workmanship are more than covered by the amount of the unpaid invoices." Accounting for the $6336.95 in contract damages found

[damage] could reasonably be remedied by applying caulking . . . [t]hat would not even come close to the approximately $5000 in costs to replace them."

[8] Newton's remediation proposal itemized restoration to balusters, lattice panels, and newel posts and caps. With respect to the balusters, the plaintiffs claimed that remediation was necessary to fix some uneven spacing. In response, the court noted that the equidistant spacing of balusters, particularly near the newel posts, was not called for in the blueprints. This was acknowledged by Newton himself when he testified as the plaintiffs' construction expert. As to the lattice work, the remediation proposal reflects the replacement of pine lattice panels with cedar panels. Although the original agreement may have called for the use of cedar panels, the court found, and the record demonstrates, that the plaintiffs did not object to the substitution of pine. The remediation estimate also reflects repair work to the newel post covers and post caps on the porch. In its memorandum of decision, and again in its articulation, the court stressed that any noticeable separation in the posts and caps was repairable by applying caulking. Our review of the record, including evidence that this separation was not present at the time of installation and likely resulted over time as a result of rainwater penetration, supports this finding.

attributable to the defendant, it certainly was logical for the court to find that the claimed $750 in damages, even if genuine,[9] would be more than "covered" by the $8000 withheld by the plaintiffs. Therefore, the court's treatment of the bifold door damages was not clearly erroneous, and this claim also must fail.

II

Last, the plaintiffs claim that the act; General Statutes § 20-418 et seq.; and specifically General Statutes § 20-429 (a), prohibited the court from offsetting the plaintiffs' damages award by an amount equal to the unpaid balance remaining on the contract as a matter of law. We disagree.

Our analysis begins by setting forth the applicable standard of review. "To the extent that we are required to review conclusions of law or the interpretation of the relevant statute by the trial court, we engage in plenary review." *Location Realty, Inc.* v. *Colaccino*, 287 Conn. 706, 717, 949 A.2d 1189 (2008). "Under plenary review, we must decide whether the trial court's conclusions of law are legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Krichko* v. *Krichko*, 108 Conn. App. 644, 648, 948 A.2d 1092, cert. granted on other grounds, 289 Conn. 913, 957 A.2d 877 (2008) (appeal withdrawn May 19, 2009).

The act expressly invalidates home improvement contracts that fail to meet certain provisions. See General Statutes § 20-429 (a). Specifically, § 20-429 (a) (8)

---

[9] There is some dispute over whether the plaintiffs were entitled to any damages regarding the bifold doors. The defendant claims, and the plaintiffs concede, that the parties discussed the defendant's failure to construct the bifold doors and agreed that the defendant would credit this amount toward the plaintiffs' final invoices. Whether this amount was properly credited is not relevant to our conclusion that the court's bifold door damages findings are not clearly erroneous. Therefore, we decline to address it further.

declares contracts entered into by unregistered contractors unenforceable.[10] Furthermore, "in the absence of a showing of bad faith on the part of the homeowner, a contractor who does not comply substantially with § 20-429 (a) is barred from any monetary recovery, contractual or restitutionary." *New England Custom Concrete, LLC* v. *Carbone*, 102 Conn. App. 652, 659, 927 A.2d 333 (2007), citing *Barrett Builders* v. *Miller*, 215 Conn. 316, 324–25, 576 A.2d 455 (1990).

It is undisputed that the defendant was not registered as a home improvement contractor while engaging in construction work with the plaintiffs. Consequently, the plaintiffs maintain that this § 20-429 (a) violation prohibited the court from offsetting the plaintiffs' contractual damages by moneys they withheld from the defendant, as this was tantamount to a monetary recovery.

Recently, our Supreme Court addressed this issue in *Hees* v. *Burke Construction, Inc.*, 290 Conn. 1, 961 A.2d 373 (2009).[11] In that case, the plaintiff homeowners brought an action against the defendant contractor on the basis of allegedly unfinished and defective construction work. Id., 4–5. As in the present case, the homeowners pursued the claim notwithstanding an unpaid balance due on the contract for work performed by the contractor. Id., 4.

The attorney trial referee filed a report finding that the plaintiffs incurred $16,085 in costs to complete and

---

[10] General Statutes § 20-429 (a) provides in relevant part: "No home improvement contract shall be valid or enforceable against an owner unless it . . . (8) is entered into by a registered salesman or registered contractor . . . ."

[11] The principal issue in *Hees* was whether a violation of the act, and specifically § 20-429 (a), "precludes a home improvement contractor from reducing the damages that it owes for breach of contract to a nonbreaching homeowner by an amount equal to the unpaid balance remaining on the contract." *Hees* v. *Burke Construction, Inc.*, supra, 290 Conn. 3.

to repair the work. Id., 5. The defendant contractor requested that this potential award be offset by the $16,472 balance remaining on the contract withheld by the plaintiffs. Id. The attorney trial referee declined the defendant's request and concluded that because the contract did not comply with § 20-429 (a),[12] the defendant was precluded from "reduc[ing] the damages award commensurate with the unpaid balance on the contract . . . ." Id. The trial court accepted the referee's report and rendered judgment in favor of the plaintiffs. Id., 6.

On appeal, the defendant claimed that neither the language of § 20-429 (a), nor any of the cases interpreting it, dispensed with traditional contract damage rules that mandate a showing of actual loss to recover on a contract claim. Id., 9. "To hold otherwise," the defendant argued, "would give [the homeowners] a windfall double recovery . . . ." Id. Our Supreme Court agreed with this statutory analysis[13] and concluded that "§ 20-429 (a) does not preclude a trial court from reducing the homeowner's damages by the amount left unpaid under the contract." Id., 10. Otherwise, the court reasoned, "§ 20-429 (a) could be read to allow a homeowner affirmatively to obtain a free home improvement project from the contractor, rather than simply to prevent the contractor from enforcing otherwise valid

[12] The home improvement contract did not include a right of rescission clause as required by § 20-429 (a) (6). *Hees* v. *Burke Construction, Inc.,* supra, 290 Conn. 5. Although the plaintiffs in the present case complained of a registration violation under § 20-429 (a) (8), this technical difference is of no consequence, as the Supreme Court in *Hees* analyzed the thrust of § 20-429 (a) as a whole. See footnote 11 of this opinion.

[13] The court noted that the language of § 20-429 (a) did not unambiguously indicate whether the statute precluded a contractor from relying on offset protection in an action brought by a homeowner. The court thereafter turned to extratextual sources and concluded that "the legislative history of § 20-429 (a) does not support the [homeowners'] contention that the act was intended to supersede established principles of contract damages, and allow a homeowner affirmatively to recover damages to which he would not otherwise be entitled." *Hees* v. *Burke Construction, Inc.,* supra, 290 Conn. 13.

claims against the homeowner." Id., 16. Awarding this type of an "unwarranted windfall" could not have been intended by the legislature. Id., 15.

The plaintiffs in the present case, unlike the homeowners in *Hees*, included a CUTPA claim in their action against the defendant contractor. This additional claim, however, does not alter our conclusion as to the applicability of § 20-429 (a) to the plaintiffs' damages award. "[T]he simple fact that § 20-429 (a) serves as the basis for [a] CUTPA violation . . . does not affect the [ultimate] damages calculation . . . ." Id., 14–15. It also does not dispense with the firmly established principle that to succeed, a CUTPA claimant must demonstrate a statutory violation coupled with some ascertainable loss. "Once a violation of the act has been established . . . our cases make clear that the homeowners still must prove that they have suffered an injury or actual loss in order to recover damages under CUTPA." Id., 14; see also *Stevenson Lumber Co.-Suffield, Inc.* v. *Chase Associates, Inc.*, supra, 284 Conn. 214 ("in order to prevail in a CUTPA action, a plaintiff must establish both that the defendant engaged in a prohibited act *and* that, as a result of this act, the plaintiff suffered an injury" [emphasis in original; internal quotation marks omitted]). Therefore, litigants seeking CUTPA relief must present evidence of damages they have suffered. See *New England Custom Concrete, LLC* v. *Carbone*, supra, 102 Conn. App. 666. "There is no automatic entitlement to damages." Id.

The record reveals that the plaintiffs have not provided adequate evidence demonstrating an ascertainable loss. The court found that the plaintiffs sustained $6336.95 in contract damages but reduced the final award by the $8000 that the plaintiffs withheld from the defendant. "It is axiomatic that the sum of damages awarded as compensation in a breach of contract action should place the injured party in the same position as

he would have been in had the contract been performed. . . . The injured party, however, is entitled to retain nothing in excess of that sum which compensates him for the loss of his bargain. . . . Guarding against excessive compensation, the law of contract damages limits the injured party to damages based on his actual loss caused by the breach. . . . The concept of actual loss accounts for the possibility that the breach itself may result in a saving of some cost that the injured party would have incurred if he had had to perform. . . . In such circumstances, the amount of the cost saved will be credited in favor of the wrongdoer . . . that is, subtracted from the loss . . . caused by the breach in calculating [the injured party's] damages." (Internal quotation marks omitted.) *Hees* v. *Burke Construction, Inc.*, supra, 290 Conn. 7–8.

As our Supreme Court established in *Hees*, homeowners are unable to rely on § 20-429 (a) as a shield against their withholding of moneys due on a home improvement contract in an action brought by the homeowners themselves. Therefore, we agree with the court's conclusion in the present case that the plaintiffs' unpaid contract balance should have been subtracted from their total contract damages. The plaintiffs withheld an amount in excess of their actual damages incurred; consequently, they do not have an ascertainable loss for which recovery is permissible. Concluding otherwise would grant the plaintiffs a windfall that would reward their withholding of valid contract payments. This approach also would fail to account for their true contract damages. Accordingly, we conclude that the court's offsetting of the plaintiffs' damages award by moneys they unilaterally withheld from the defendant was correct as a matter of law.

The judgment is affirmed.

In this opinion the other judges concurred.